IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 6, 2004 Session

## DONNA WOODS HARTMAN v. PATRICK ERWIN HARTMAN

**Appeal from the Chancery Court for Maury County**
**No. 99-441     Jim T. Hamilton, Judge**

**No. M2003-00805-COA-R3-CV - Filed December 30, 2004**

This appeal arises out of the parties' divorce following their second marriage to each other. The trial court *inter alia* awarded the wife $75,000 for her contributions, in the form of personal services to the husband's medical practice, and awarded her one-half of the equity in the home where the parties resided during the second marriage. Husband appeals the first award, arguing that the medical practice was his separate property and that the wife failed to prove any increase in the value of the practice during the marriage. He appeals the second award, arguing that the trial court erred by not considering two marital debts when it awarded half of the equity in the home to the wife. We vacate the $75,000 award pertaining to the value of the husband's medical practice because there is no evidence of the value of the practice at the beginning or end of the second marriage. We remand for further proceedings the award of the equity in the home because the trial court failed to consider two marital debts, the husband's loan to wife of $18,500 – which she used to buy her current residence – and the couple's debt of $10,599.12, for which they were jointly liable. On remand, the trial court should consider *inter alia*: 1) the purpose of each debt, 2) which party incurred the debt, 3) which party benefitted from incurring the debt, and 4) which party is best able to repay the debt.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Vacated in Part, Reversed in Part, and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., joined. WILLIAM B. CAIN, J., filed a separate concurring opinion.

Keith R. Peterson, Pulaski, Tennessee, for the appellant, Patrick Erwin Hartman.

John Philip Parsons, Cookeville, Tennessee, for the appellee, Donna Wood Hartman.

### OPINION

The parties were married to each other twice. Their first marriage ended in divorce in 1988. The parties' assets from the first marriage were divided pursuant to the first divorce decree and successfully re-titled in their separate names. One such asset was Husband's medical practice which was awarded to him as his separate property. Following the 1988 divorce, Husband purchased a

house with assets he was awarded in the first divorce. Thereafter, the parties rekindled their romance and began living together in Husband's new house. Following a period of cohabitation, the parties again exchanged vows of marriage in 1992. They continued to reside in the house Husband had purchased before the second marriage.[1]

In 1993, Wife began working without pay in Husband's medical practice. It is estimated that she worked between 30 and 60 hours a week for four years. This continued until Husband closed his medical practice in 1997. The practice was closed due to a substantial decline in revenue which was the result of Husband losing his hospital privileges and a substantial decline in patients.

Wife commenced this divorce action in July of 1999. The parties were granted a divorce pursuant to an agreed order entered on August 1, 2000; however, all issues pertaining to marital assets and property were reserved for further hearings. On May 8, 2002, the trial court entered an order in accordance with Tenn. R. Civ. P. 31 designating Jane Jennings to conduct mediation of the remaining issues. Mediation ensued and on June 21, 2002, a Final Report of Mediator was filed which reported that the parties appeared and participated but the case did not settle. The report further provided that, "There are legal issues involved to determine which property is marital property that is subject to division. Until it is determined exactly which property is marital property, these parties cannot reach an agreement."

Thereafter, another order was entered on November 20, 2002, resolving more, but not all, remaining issues. The order stated that the parties had agreed the "Starlight" business was Husband's separate property and that the parties had resolved disputed claims relative to the personal property in the home. The order further stated that "the main issue" to be decided was the value of the parties' marital home and the distribution of the equity in the home and that "all other matters" were reserved. However, the order did not specify which "other matters" were reserved.[2]

The next order appearing chronologically in the record is the February 25, 2003, order that contains the two rulings at issue on appeal. The order states that the remaining issues were "considered by Alternative Dispute Resolution." There is, however, no order or written consent in the record evidencing the parties' consent to resolve all remaining issues by ADR.[3] The Statement of the Evidence provides a modicum of information from which we can only assume that the parties agreed to submit the remaining issues to the trial judge via an informal and unorthodox evidentiary procedure.

---

[1] Title to the house never changed. It remained in Husband's name only throughout the second marriage.

[2] One of the "other matters" pertained to Husband's IRA. The IRA was awarded to Husband pursuant to the final order and is not at issue on appeal.

[3] The only order authorizing ADR was the May 8, 2002, order in which Jane Jennings was designated as the mediator.

The February 25, 2003, order, which is the subject of this appeal, contains the following recitation: "An Order filed on November 20, 2002, . . . finalized all matters in dispute with the exception of the valuation of both the real and personal marital property owned by the parties and the marital interest into certain business relationships." It then recites the two rulings at issue. One, that the equity in the residence is $30,973, of which Wife was awarded one-half. Two, that Husband's medical practice should be considered a marital asset "as the [Wife] clearly contributed to the ongoing success of the medical practice" and that Wife is entitled to "a distributive share of this marital asset because of [sic] her efforts as an unpaid employee contributed to the maintenance and success of said medical practice." The trial court found the value of "this distributive asset" to be $75,000 and that this sum "represents some four years labor without monetary compensation."

The $30,973 equity in the residence was based on the trial court's findings that Husband purchased the home in 1990 for $97,500 and the home had a current market value of $128,473. The market value was disputed. Husband had insisted the value was $125,000. Wife had insisted the value was $157,000. The judge's finding was based on the independent appraiser's opinion. As for the value of Wife's contributions to the medical practice, the trial court stated that the award of $75,000 represents "some four years labor without monetary compensation."

## Issues

Husband raises two issues on appeal. One, whether the trial court erred in awarding $75,000 to Wife for her alleged contribution to Husband's medical practice. Two, whether the trial court erred in awarding Wife one-half of the equity in the residence that was separately owned by Husband and without consideration of Husband's loan of $18,500 to Wife and the parties' joint debt of $10,599.12.

## Alternative Dispute Resolution

The order from which this appeal arises states that the issues were "considered by Alternative Dispute Resolution."[4] That characterization, however, is not correct because the decision-making authority in the case before us did not rest with the parties and the procedure employed was not a recognized form of ADR under Tenn. S. Ct. R. 31. "In dispute resolution proceedings, *decision-making authority rests with the parties*." (emphasis added) Tenn. S. Ct. R. 31, Appendix "A" § 1(b). Proceedings authorized by Rule 31 are "Mediations," "Judicial Settlement Conferences," "Non-Binding Arbitrations," "Case Evaluations," "Mini-Trials," and "Summary Jury Trials." Tenn. Sup. Ct. R.31, §§ 2, 17, 20-24. Such proceedings are initiated by an Order of Reference. Tenn. Sup. Ct. R.31, § 2(j).

---

[4]We do not know the exact procedure followed in this case for there is no order or agreement concerning such and there is no verbatim transcript of the evidence. From the little information available in the record, it appears the parties agreed to allow the adversary to meet privately with the trial judge and to introduce any and all evidence they desired, following which the trial judge would make a ruling that was binding on the parties. The foregoing is not one of the ADR procedures authorized pursuant to Tenn. S. Ct. R. 31. Moreover, it is not in compliance with the Uniform Arbitration Act, Tenn. Code Ann. § 29-5-301, et seq.

There was a Rule 31 ADR proceeding conducted in this matter; however, it was not the one that is the subject of this appeal. It was the mediation authorized by the May 8, 2002, Order of Reference. The parties participated in the ordered mediation, however, as some times occurs, the mediation did not resolve the matters in dispute. Therefore, as Rule 31 § 5 requires, the mediator filed her final report on June 21, 2002, which concluded the Tenn. S. Ct. R. 31 ADR proceeding.

Several months following the filing of the former mediator's final report, the parties submitted the remaining issues to the trial judge, who was to render a final judgment following the presentation of evidence by the parties. Though we have no way of knowing the exact procedure the parties and the trial court employed to present evidence to the court, the procedure employed constituted a bench trial, albeit an unorthodox bench trial.[5] Since our record tells us little about the procedure employed, we assume the "bench trial" was conducted pursuant to procedures similar to those employed by the same trial judge in *Thomas v. Thomas*, No. M2001-01226-COA-R3-CV, 2002 WL 1787950 (Tenn. Ct. App. August 2, 2002), wherein the parties waived the right to be present when the adversary party presented his or her evidence to the trial judge, to cross examine witnesses and to even know what evidence the adversary presented.[6]

This court has previously criticized the so-called ADR procedure practiced in the Twenty-Second Judicial District and we see no reason to withdraw from our criticism.[7] A brief review of the confusion and problems resulting from this unorthodox procedure will explain why it is a bad idea. In *Smith v. Smith*, 989 S.W.2d 346, 348 (Tenn. Ct. App. 1998), the appellant argued that the same trial judge erred in "re-opening the case" after issuing its decree, contending that "the procedure the parties initially agreed upon amounted to a type of Alternative Dispute Resolution (ADR) akin to binding arbitration, with the trial court acting as arbitrator." *Id*. at 348. The appellant relied upon the Uniform Arbitration Act, Tenn. Code Ann. § 29-5-301, et seq., under which an arbitration award may not be modified or vacated except under circumstances that were not present

---

[5]The procedure employed should not be confused with a Tenn. S. Ct. R. 31 §§ 2(g) & 23 Mini-Trial because that ADR proceeding does not contemplate a binding ruling by the "neutral" or judge, as was the case here. Moreover, a Mini-Trial is to be preceded by an Agreed Order that should be consistent with Appendix D to Tenn. S. Ct. R. 31.

[6]Such a procedure is appropriately employed in mediation, and other ADR proceedings, to facilitate a resolution of the dispute; however, in all such proceedings the neutral is merely a facilitator of discussions between the parties and, most importantly, is not authorized to make a binding ruling to dispose of the issues in dispute. The only way such a proceeding can bring closure is when the parties voluntarily agree to settle their dispute. That is not the case here and we question the propriety of trial counsel agreeing to allow their adversary to present evidence to the trier of fact without knowing what is being presented when the resulting decision by the court is binding on the parties.

[7]Our previous criticism is found in *Smith v. Smith*, 989 S.W.2d 346 (Tenn. Ct. App. 1998), *King v. King*, No. M2001-00275-COA-R3-CV, 2001 WL 1589131 (Tenn. Ct. App. December 13, 2001) and *Thomas v. Thomas*, No. M2001-01226-COA-R3-CV, 2002 WL 1787950 (Tenn. Ct. App. August 2, 2002). The concurring opinion in *Thomas* noted that the appeal marked this court's third occasion to review the 22nd Judicial District's use of a procedure this court characterized as "not a good idea." We went on to recommend that in the future, "should either or both of the parties propose this procedure, trial courts should simply say no." *Id*. at * 8. Litigants and courts "have ample options for alternative dispute resolution under Tenn. S. Ct. R. 31 without jury-rigging a procedure like the one used in this case." *Id*. at * 8.

in *Smith*. *See* Tenn. Code Ann. § 29-5-310, 313 and 314. This court found that the proceedings conducted by the trial court were ill advised because they differed in many important respects from an arbitration authorized by the Uniform Arbitration Act. "It appears to us that some of the provisions of the Act were adopted as safeguards, to prevent parties from being victimized by the very finality that makes arbitration the procedure of choice for certain types of disputes. Thus, an agreement to arbitrate must be in writing, Tenn. Code Ann. § 29-5-302(a)." *Id*. at 348. Not only was there no written agreement to arbitrate, the attorneys presented differing accounts as to the nature of the purported agreement. Counsel for the appellant testified by affidavit that he and opposing counsel "had agreed that the decision of the judge following the in camera proceeding would be final, and the 'case would forever be concluded based on his ruling.'" *Id*. at 348. Appellee's counsel filed his own affidavit in which he explained the circumstances that led him to suggest that some method of ADR be used to decide the case, but denied that he had ever agreed to waive his right to appeal an unfavorable outcome. The wife, Ms. Smith, filed an affidavit, in which she stated that her attorney told her that if the decision was adverse, the process of appellate review was still available. *Id*. at 348. Due to the confused state of affairs appearing in the *Smith* record, this court had little option but to find that everyone had agreed that "the prior hearing held in chambers between the Court and the parties and the Court's ruling based on that hearing, would be held *do novo* (sic)." Thus, it was reviewed by this court as an appeal from a bench trial, not from an ADR proceeding.

The ill advised practice and resulting confusion continued in *King v. King*, M2001-00275-C0A-R3-CV, 2001 WL 1589131 at *3 (Tenn. Ct. App. Dec. 13, 2001), wherein this court considered a procedure very similar to the one above and that used here.[8] In *King* we determined that the unorthodox procedure was not a mediation, as was argued by one party, but instead "an agreed-upon method of presenting evidence to the trial court." *Id*. at *3. Similar problems arose once again from the same trial court in *Thomas v. Thomas*. Due to the continuing confusion concerning the uncertainty as to the type of procedure that had been employed in the trial court, mediation or bench trial, the court couched its ruling as follows:

> If, in fact, the parties below simply agreed to an alternative method for getting evidence before the trial court upon which the court was to base its ruling, the result of that agreement was a waiver of the right to present additional relevant testimony through other witnesses with knowledge of the facts, the right to be present when the other party testified, and the right to cross-examination, all of which are waivable. Although the trial court apparently authorized court reporters to be present at the separate presentation of each party, neither party took advantage of this offer. The combination of this decision and the waiver of the right to be present during the other party's testimony resulted in neither party knowing the details of the other's testimony, even after-the-fact, and the subsequent inability to preserve that testimony for appellate review either through a transcript or a statement of the evidence.

---

[8]*King* involved the same trial court and one of the same attorneys in *Thomas*.

The pivotal question, then, is whether the parties, through counsel, agreed: (1) to a "mediation" process with the expectation that agreement of the parties was necessary to resolution; or (2) to an unusual method of presenting evidence, while still operating in the litigation model, with the expectation the court would resolve the dispute based upon the evidence presented in this unusual procedure.

The record does not include a formal written agreement or agreed order outlining the specifics of the parties' agreement. [footnote omitted] The trial court's final order sets out all we know about the agreement. That order is silent on the question of whether the parties agreed to resolution by agreement through mediation or whether they agreed that the court would resolve their dispute, but certain alterations in presentation of evidence would be made. However, the language used by the trial court suggests that the parties, through their counsel, were aware that the separate hearings with the trial court were "to offer testimony . . . present exhibits, and other documentation."

*Thomas*, 2002 WL 1787950 at *3-4.[9]

While we encourage courts and litigants to engage in alternative dispute resolution proceedings, such proceedings should be conducted in accordance with the procedures established under Tenn. S. Ct. R. 31, especially when the trial judge is a participant. The purpose of Tenn. S. Ct. R. 31 is stated in the Preamble of Appendix "A":

These rules are intended to instill and promote public confidence in the Alterative Dispute Resolution process under Tennessee Supreme Court Rule 31 and to be a guide to Neutrals serving under Rule 31. As with other forms of judicial system activity, Rule 31 proceedings must be built on public understanding and confidence.

---

[9]The court went on to explain:

The proceedings authorized by Rule 31 include, among others, mediation and judicial settlement conference. Tenn. R. Sup. Ct. 31 § 2. Mediation is "an informal process in which a neutral person, called a mediator, conducts discussions among the disputing parties designed to enable them to reach a mutually acceptable agreement among themselves on all or any part of the issues in dispute." Tenn. R. Sup. Ct. 31 § 2(f). A "judicial settlement conference" is "a mediation conducted by a judicial officer other than the judge before whom the case will be tried." Tenn. R. Sup. Ct. 31 § 2(e). [footnote omitted] As the definitions make clear, a mediation, including one conducted by a judicial officer, is a settlement procedure; its purpose is to help the parties resolve their dispute by agreement, as an alternative to resolution through the well-established procedures governing litigation. Nothing in the definition of mediation or elsewhere in Rule 31 authorizes a mediator, including a judge acting as a mediator, to resolve the dispute by imposing his or her judgment as to the correct resolution. [citations omitted]. If the parties are unable in mediation to reach an agreeable solution, they retain their rights to have the courts resolve their dispute through litigation. *Id.* at * 3.

-6-

Conducting ADR pursuant to Tenn. S. Ct. R. 31 provides established procedures for the parties and the neutral or the trial judge to follow and affords the parties the safeguards intended by those who crafted Tennessee's alternative dispute resolution standards and procedures.

We submit, with all due respect, that the so-called "Alternative Dispute Resolution" process employed by the trial court is not understood by the public or, for that matter, their counsel, as *Smith, King* and *Thomas* reveal. More importantly, we submit that it does not foster confidence in the judicial system. For the foregoing reasons, we recommend that the unorthodox practice be discontinued and replaced by one of several options afforded under Tenn. S. Ct. R. 31 or by litigation conducted in accordance with generally accepted practices and rules of procedure.

## Standard of Review

Having determined that what transpired in the trial court was not an ADR proceeding but a bench trial, we shall conduct our review of the proceedings in the trial court pursuant to Tenn. R. App. P. 13. A trial court's decision with respect to division of marital property is reviewed *de novo* with a presumption of correctness as to factual determinations unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d), *Miller v. Miller*, 81 S.W. 3d 771, 774 (Tenn. Ct. App. 2001). So long as the facts do not preponderate against the finding of the trial court, the appellate court must affirm. *Denton v. Denton*, 33 S.W.3d 229, 231 (Tenn. Ct. App. 2000).

What constitutes marital property and the value of a party's interest in marital property is a question of fact. *Powell v. Powell*, 124 S.W. 3d 100, 103 (Tenn. Ct. App. 2003). In adjudicating the rights of parties in a divorce, trial courts are entitled to broad discretion, *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 243 (Tenn. Ct. App. 1995), and such discretion is entitled to great weight. *Powell* at 103. Equitable distribution of marital property is not a mechanical decision, and such a decision is not necessarily inequitable because it is not precisely equal. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

A trial court is afforded great latitude in the valuation of marital property, thus a value within the range of values in evidence may be upheld even if the trial court does not explain the precise method used to arrive at the value it has assigned. *Ray v. Ray,* 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995). On the other hand, a valuation can be set aside even though it is within the range of proof, if the valuation is against the preponderance of the evidence. *Loyd v. Loyd*, 860 S.W. 2d 409, 411 (Tenn. Ct. App. 1993).

A trial court's determination regarding the credibility of witnesses is accorded deference since the trial court is in the best position to make this determination. *Powell* at 104-105. Absent clear and convincing evidence to the contrary, the trial court's decisions on witness credibility will not be reviewed. *Id*. at 105.

**Husband's Medical Practice**

Husband challenges the trial court's characterization of his medical practice as a marital asset and the award of $75,000 to Wife based on her contributions to the practice.[10] Husband owned the medical practice prior to the second marriage[11] and he contends the medical practice remained his separate property during the marriage. He further contends that an increase in the value of his separate property – his medical practice – may only be considered marital property upon a finding that Wife made a "substantial contribution" that can be quantified. He argues that the only evidence of Wife's contribution to the practice was testimony that she worked approximately 30 to 60 hours per week from 1992 to 1997; yet, there is no evidence of the value of the practice at the beginning and the end of the second marriage.

When a spouse seeks to include property in the marital estate that the other spouse claims is separate, the spouse seeking to include the property has the burden of proving that the property fits within the statutory definition of marital property. *Kinard v. Kinard*, 986 S.W. 2d 220, 232 (Tenn. Ct. App. 1998). Thus, "as a threshold matter, property must first qualify as marital property under T.C.A. § 36-4-121(b)(1)(A) or T.C.A. § 36-4-121(b)(1)(B) before it can be subject to the court's powers of equitable division under T.C.A. § 36-4-121(a)(1)." *Cutsinger*, 917 S.W. 2d at 241. Our courts do not have authority to make an equitable division of the property if the nonowner spouse cannot prove that the property at issue is marital property. *Id.* at 241. An increase in the value of separate property and the income derived from it can be treated as marital property if the nonowner spouse made substantial contributions to the preservation and appreciation of the separate property. Tenn. Code Ann. § 36-4-121(b)(1)(B); *Cohen v. Cohen*, 937 S.W. 2d 823, 832 (Tenn. 1996); *Harrison v. Harrison*, 912 S.W. 2d 124, 126 (Tenn. 1995). Marital property is defined in Tenn. Code Ann. § 36-4-121 to mean and include the following:

> (1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. . . . All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property.

---

[10]He presents four arguments. One, he asserts that the court erred in finding that the practice was a marital asset. Two, he contends that there is no evidence of the value of the practice at the beginning of the second marriage or of an increase in value of the practice and that instead the evidence showed that the practice was closed because it was doing so badly. Third, he contends that the court's award was not based on the increase in value of the practice, but based on the uncompensated time Wife worked in the practice. Fourth, he asserts the court erred by not considering that Wife enjoyed the fruits of the practice during the marriage.

[11]He was awarded the medical practice as his separate property in the first divorce.

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

* * * *

(D) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

A finding that a nonowner spouse's contribution is "substantial" requires that the contribution be real and significant. *Mitts v. Mitts*, 39 S.W.3d 142, 145 (Tenn. Ct. App. 2000); *Denton v. Denton*, 33 S.W. 3d 229, 236 (Tenn. Ct. App. 2000). Whether substantial contributions to the preservation and appreciation of separate property have been made by a spouse is a question of fact. *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992).

The nonowner spouse who claims an increase in the separate property must prove that the value of the separate property increased during the marriage. It thus follows that the value of the property immediately before the marriage and at the time of the divorce must be proven. *Swett v. Swett,* M1998-00961-COA-R3-CV, 2002 WL 1389614 at *10 (Tenn. Ct. App. June 27, 2002) (citing *Garfinkel v. Garfinkel*, 945 S.W 2d 744, 747 (Tenn. Ct. App. 1996); *Cutsinger*, 917 S.W. 2d at 241. Without proof of the value of the separate asset before the marriage, the trial court has no legitimate basis on which to base an appreciation of the asset and therefore an equitable distribution of claimed appreciation cannot be made. *Cutsinger* at 241 (citing *Bryson v. Bryson*, No. 88-94-II, 1988 WL 87685 at *3 (Tenn. Ct. App. Aug. 26, 1988)). "One who claims an interest in the increase in value of the separate property of his spouse has the burden of showing the amount of such increase." *Bryson* at *3.

In *Cutsinger* the wife began working in her husband's chiropractic clinic shortly after the couple was married and continued to do so throughout the marriage. She was paid a salary while working at the clinic. *Id.* at 239. The husband became ill and had to leave the practice for approximately one year during which time the wife continued to work in the practice and kept it running by obtaining the services of other chiropractors to treat the patients. *Id.* at 239. She argued that her contributions entitled her to part of the purchase price when the practice was sold. The trial court awarded the wife an interest in the practice, but this court reversed, finding that the wife did not offer sufficient proof as to the value of the business prior to the marriage. *Id.* at 243. Her only proof of appreciation was that when the couple was first married the practice served 4-5 patients per day, but that when the couple divorced 35-40 patients per day were being treated. *Id.* at 242. She asserted that this increase in patients proved an increase in value. This court, however, found that there was no evidence that the "actual monetary value of the husband's practice had risen to

correspond with the increase in the number of patients" and was unwilling to infer that the business had appreciated just because it was treating more patients. *Id*. 242. In reversing the trial court, this court said:

> Without such fundamental information, Wife's interest in the purchase price could not be made without speculation as to the exact amount of appreciation of the practice attributable to her services. Accordingly, we find that the trial court erred in awarding wife a 30% interest in the purchase price of Husband's practice.

*Id.* at 242.[12]

The record before us is modest. There is no verbatim transcript of the proceedings. There is however a brief Statement of the Evidence, four pages, and of course the final order. The Statement of the Evidence tells us that:

> There was also testimony as to Patrick Erwin Hartman's medical practice. Donna Woods Hartman worked at this medical practice during the course of the parties second marriage. However Patrick Erwin Hartman closed his medical practice in November 1997 due to a loss of hospital privileges as well as a declining practice. At the time he closed the medical practice, he and Donna Woods Hartman were still married and she was aware of the reasons for the closing of the medical practice. Donna Woods Hartman filed for divorce July 27, 1999, and some 20 months after the closing of the medical practice.
>
> * * * *
>
> Judge Jim T. Hamilton also found in the Order dated February 25, 2003, that the medical practice was a marital asset and awarded $75,000.00, to the plaintiff for her 4 years of labor, 1992 through 1997, without receiving a salary or an hourly wage.

The pertinent part of the final order reads as follows:

> It further appeared to the Court that the medical practice which existed throughout the marriage should be considered a marital asset as the Plaintiff clearly contributed to the ongoing success of the medical practice.
> The Court further finds that the Plaintiff is entitled to a distributive share of this marital asset because of her efforts as an unpaid employee contributed to the maintenance and success of said medical practice.
> The Court finds that the value of this distributive asset awarded to the Plaintiff is Seventy-five Thousand ($75,000) Dollars, which represents some four years labor without monetary compensation beginning in 1993, after the parties

---

[12]It was additionally noted that the wife had been compensated for her work in the practice. *Cutsinger* at 243.

remarried in 1992, through 1997, when the Defendant closed his medical office without the knowledge or consent of the Plaintiff and without any forewarning to her.

Testimony offered at [sic] in these proceedings show that the Defendant was advised by his CPA to set up some type of account for the Plaintiff as she was working some 30-60 hours per week. However, the Defendant never followed this advise [sic] saying, "her keep is enough." The Court finds that this statement is not sufficient."

The modest record before us fails to establish an evidentiary link between Wife's services to Husband's medical practice and an award of $75,000. There is no evidence of the value of the practice at the time of the second marriage and there is no evidence of the value of the practice at the time of the second divorce. Thus, there is no evidence that Wife's services caused an increase in the value of Husband's medical practice. Moreover, from the limited record before us, all we can determine is that the practice was closed long before the divorce complaint was filed and that if the remnants of the practice had any value it was in worse financial shape than when the parties married for the second time in 1992.

To justify an award to Wife for working 30 to 60 hours per week in the practice from 1992 to 1997, there must be evidence that such contributions "substantially contributed to . . . [the] preservation and appreciation" of Husband's medical practice, Tenn. Code Ann. § 36-4-121(b)(1)(B), and there must be evidence of the value of such contributions. *See Garfinkel*, 945 S.W 2d at 747; *Cutsinger*, 917 S.W. 2d at 241. The record before us is devoid of any proof that Wife's services contributed to an increase in the value of the medical practice. We, therefore, find that the evidence preponderates against any award to Wife for her contributions to Husband's medical practice and vacate the award of $75,000 to Wife.

### Division of Equity in Home and Allocation of Marital Debts

Husband asserts that the trial court failed to make an equitable distribution of the marital assets and marital debts. Specifically, he asserts that the trial court erred by awarding one half of the equity in the home to Wife without allocating responsibility for two marital debts. One of the debts is an $18,500 loan Husband provided to his Wife near the end of the second marriage to enable her to purchase a home to be her residence following the divorce. The other is a $10,599.12 debt for which the parties are jointly liable.

"Marital debts" are all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing. *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). The Statement of the Evidence reveals that Husband submitted evidence concerning the two marital debts. It reads in pertinent part:

The defendant, Patrick Erwin Hartman, Sr., further testified that the parties have a joint loan at First Farmer's and Merchants Bank with an approximate balance of $10,599.12 as of September 2, 2001 plus accrued interest. The defendant asked

the court to consider this note when making its decision to the interest of the plaintiff in the real property located at Clifton Drive [the marital residence]. A copy of the loan statement was exhibited by the defendant.

The defendant, Patrick Erwin Hartman, Sr., also testified that he had made a personal loan of $18,500.00 to the plaintiff prior to the divorce so as to allow her to purchase a home in Franklin, Tennessee. The Defendant also requested the court to consider this amount in considering the division as to the [marital residence].

Though evidence was presented concerning the two debts, the final order does not mention either debt. Moreover, there is nothing in the record to indicate that the debts were considered by the trial court it was making a distribution of the marital assets and none of the previous orders allocate the responsibility for the debts.

The relevant financial liabilities of each of the parties is one of many relevant factors for the court to consider in making an equitable division of marital property. *See* Tenn. Code Ann. § 36-4-121(c)(2). To provide for an equitable distribution of marital assets when there are marital debts, our courts are to consider four factors:

> (1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt. *Mondelli*, 780 S.W.2d at 773. A careful application of these factors will insure the fairest possible allocation of debt. It will also protect the spouse who did not incur the debt from bearing responsibility for debts that are the result of personal excesses of the other spouse.

*Alford*, 120 S.W.3d at 814 (citing *Mondelli v. Howard*, 780 S.W.2d 769 (Tenn. Ct. App. 1989)).

The record before us is similar to that in *Alford* wherein the court found the record deficient with respect to two of the *Mondelli* factors. While finding it clear that the wife incurred the debts and that the husband was in a better financial position to repay the debts, the *Alford* court noted there was "not sufficient evidence in the record indicating the purpose of the debts or who benefitted from incurring the debt." *Id.* at 814. Based on that finding, the court remanded the case to the trial court

> to determine how the marital debts are to be allocated between these parties. In making this determination, the trial court should be guided by the *Mondelli* factors and should require the parties to present more evidence relevant to the factors set out above. We note that the trial court has broad discretion and should do equity in allocating debt as one part of the overall distribution of marital property. Because the relevant financial liabilities of each of the parties is one of many relevant factors for the court to consider in making an equitable division of marital property, on remand

the trial court should reconsider its equitable distribution of the parties' marital property.  *See* Tenn. Code Ann. § 36-4-121(c)(2).

*Id.* at 814.

While the evidence fully supports the trial court's finding that the equity in the marital residence was $30,973, the record fails to establish that the four *Mondelli* factors were considered in allocating the marital debts or in making an equitable division of marital property.  Moreover, the record fails to establish that the two marital debts were allocated.  Accordingly, we reverse and remand for further proceedings the equitable division of the marital property, specifically the equity in the marital residence and the two marital debts at issue.

### In Conclusion

This matter is remanded to the trial court for further proceedings consistent with this opinion and costs of appeal are assessed against the parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE