IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2009 Session

## EVAN ETHELREAD ARRINDELL v. GAIL MARVITA SHIPP ARRINDELL

An Appeal from the Circuit Court for Shelby County
No. CT-001214-07     John R. McCarroll, Jr., Judge

No. W2009-00575-COA-R3-CV - Filed February 19, 2010

This is a divorce appeal.  The parties had a twenty-one-year marriage and one minor child at the time of divorce.  For the majority of the parties' marriage, the husband owned a business, and the wife was a homemaker.  After a trial, the trial court declared the parties divorced, designated the wife as the child's primary residential parent, divided the martial estate, and awarded child support, transitional alimony, and alimony *in futuro*.  The wife appeals.  We affirm the judgment of the trial court as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Gail Marvita Shipp Arrindell, Germantown, Tennessee, *pro se.*

Robert L. J. Spence, Jr., and Bryan M. Meredith, Memphis, Tennessee, for the appellee, Evan Ethelread Arrindell.

# MEMORANDUM OPINION[1]

## FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellee Evan Ethelread Arrindel ("Husband") and Defendant/Appellant Gail Marvita Shipp Arrindell ("Wife") were married in 1987. They have two children. Their older child, a daughter, was born in 1988; at the time of the proceedings below, she had reached majority and was attending college in Boston, Massachusetts. The parties' younger child, a son, was born in 1995.

Husband has a college degree in mathematics and a Master's in Business Administration (MBA). The parties married in New York and lived there for a time, where Husband pursued various business opportunities. At some point, the family moved to Memphis. During all times pertinent to this appeal, Husband has been the president, chief executive officer (CEO), and part-owner of Worldwide Label and Packaging, LLC ("Worldwide").

Wife has completed two years of college. During the majority of the marriage, she was a stay-at-home parent to the parties' two children.

In February 2007, a domestic dispute occurred between Husband and Wife in which Wife sustained physical injuries. As a result, Husband was arrested for domestic abuse.[2]

In March 2007, Husband filed a complaint for divorce, alleging irreconcilable differences and inappropriate marital conduct. Wife answered and counterclaimed for divorce, alleging irreconcilable differences, inappropriate marital conduct, and adultery.

The parties' separation proved to be tumultuous. The record indicates that Wife sought an order of protection against Husband, alleging that he had threatened and harassed her. Husband, in turn, alleged that Wife had kept him from having access to their son and

---

[1]**Rule 10. Memorandum Opinion**

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. R. App. P. 10.

[2]The record does not indicate how the criminal charge was resolved.

had taken items belonging to him. During the pendency of the divorce proceedings, the trial court entered an order authorizing sale of the marital home. Wife sought *pendente lite* child support, asserting that Husband had failed to pay support for their son and had not exercised visitation with him. She also sought payment of her attorney's fees *pendente lite*. Wife contended that Husband had refused to cooperate in discovery and, in particular, had refused to provide her documents relating to his business.

The day before the scheduled trial, Husband served on Wife his Rule 14[3] memorandum and affidavit of income and expenses. In it, Husband claimed gross income from his business of $12,800 per month, with a net pay of $10,724 per month, and expenses (including mortgage and expenses for the marital home) of $8,090 per month. Husband valued the marital home at $685,000, with mortgages totaling over $670,000. He said that he had been paying child support of $800 per month.[4] Husband proposed paying child support of $1,333 per month, and paying Wife rehabilitative alimony of $1,000 per month for three years.

The trial was held on December 11, 2008, at which Wife represented herself.[5] At the time of trial, both Husband and Wife were 50 years old. Before the testimony, the trial judge questioned Wife and the attorney representing Husband, to ascertain the parties' areas of agreement as well as their contentions.

The trial court first heard testimony from Husband. In his testimony, Husband valued the marital home at $670,000.[6] Relying on his business education and background, Husband calculated the value of his interest in his business, Worldwide. Utilizing a "discounted cash flow method," he compared Worldwide to other businesses that he said were similarly situated. Considering the existing debt of the business, Husband valued his equity interest as $7,900. He denied Wife's assertion that he made more than the $12,800 per month listed in his affidavit of income and expenses.

---

[3]Rule 14 of the Local Rules of the Circuit Court for the Thirtieth Judicial District.

[4]There is nothing in the record explaining why Husband paid only $800 per month in child support *pendente lite*.

[5]Prior to trial, Wife was represented by three different attorneys, the last being Valerie Corder, Esq., who represented Wife from approximately January 2008 to August 2008. Upon her withdrawal before the trial, the record indicates that attorney Corder sought an attorney lien for outstanding fees of some $23,000, after having already received fees of over $30,000. Wife's total attorney's fees prior to trial were over $60,000. Thereafter, apparently due to financial reasons, Wife was self-represented.

[6]This is $15,000 less than the representation Husband made in his affidavit filed a day earlier.

In her testimony, Wife asserted that Husband had income beyond his Worldwide pay of $12,800 per month. She claimed that, in addition to his salary, he had perquisites such as insurance, company credit cards used for personal expenses, and several company vehicles, although she could not place a value on these items.[7] During the marriage, Wife said, she had held sporadic employment; she had held one position in real estate, one in retail at a department store, and at another point a job with Federal Express. At the time of trial, Wife was unemployed and was taking online courses to complete her college degree. She said that, as a result of the parties' domestic dispute in February 2007, she had a permanent physical disability that prevented her from doing the type of work she had done in the past. Wife told the trial court that Husband had not been utilizing his allocated residential parenting time with their son, and indicated that she should be designated as the son's primary residential parent.[8]

At the conclusion of the proof, the trial court issued an oral ruling. Wife was designated as the son's primary residential parent and was awarded child support pursuant to the Child Support Guidelines, based on Husband's gross income of $12,800 per month in salary. The trial court found that Wife was an economically disadvantaged spouse and that rehabilitation to an income level approaching the parties' former standard of living was not feasible. Wife was awarded alimony *in futuro* of $2000 per month until January 2011, and $1500 per month thereafter.[9] The trial court indicated that the marital home would be sold, and that Husband would be responsible for doing so. Wife and the parties' son were ordered to vacate the marital home, and Husband was permitted to move in so that he could make repairs and put the house on the market as soon as possible. To the extent that Wife sought damages for her injuries stemming from the earlier domestic incident, the trial court said that it could not award such damages. Husband was to pay the marital debt and $25,000 of Wife's attorney's fees incurred in the divorce. Husband's attorney was ordered to draft a written order embodying the trial court's oral ruling.

In the written order, entered on February 5, 2009, the trial court declared the parties divorced on stipulated grounds, pursuant to Tenn. Code Ann. § 36-4-129(a). Husband was awarded the marital home, was ordered to be responsible for all debt and expenses associated

---

[7]Husband acknowledged that Worldwide had "loaned" him the money to pay his legal fees for the divorce. The parties' daughter not only drove a vehicle belonging to the company but was also receiving monthly compensation from the company. The record does not indicate whether the daughter, in college in Massachusetts, performed services for Worldwide.

[8]Husband did not dispute that Wife should be designated as the primary residential parent.

[9]The timing of this decrease in alimony *in futuro* coincides with Wife's testimony that she plans to earn her bachelor's degree by the end of 2010.

with the marital home, and was ordered to "use his best efforts to sell the marital home." Upon sale of the home, Husband was directed to divide any profit on the sale equally with Wife, with any loss to be borne by Husband. Husband's ownership interest in Worldwide was deemed to be a marital asset and was awarded to Husband. Husband was ordered to pay the marital debt. Wife was awarded the alimony outlined above, and Husband was ordered to pay half of the expense of continuing Wife's health insurance under COBRA for a period of eighteen months. Wife's request for damages for her personal injury was denied. Wife was designated as the child's primary residential parent, and Husband was ordered to pay $1,334 per month in child support. From this order, Wife now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Wife raises several issues.[10] She argues that the trial court erred in "effectively" categorizing Husband's interest in Worldwide as his separate property instead of a marital asset. Wife contends that Husband should not have been permitted to testify as an expert as to the value of his ownership interest in Worldwide. She also contends that the trial court erred in failing to require Husband to present competent evidence on the value of Worldwide. Wife maintains that the trial court erroneously failed to recognize that Husband, as president and CEO of Worldwide, was able to artificially lower his reported income for purpose of trial, and that his child support obligation under the Guidelines was thus adversely impacted. Wife argues that the trial court erroneously awarded inadequate alimony in light of the parties' comparative earning capacity. Wife contends that the trial court failed to question Husband about compensation that he received from Worldwide in excess of his take-home pay. She insists that the trial court erroneously declined to award her damages for her personal injuries and permanent disability resulting from Husband's domestic violence. Finally, Wife contends that the trial court erroneously granted Husband a divorce on the grounds of Wife's alleged inappropriate marital conduct.

Because this was a bench trial, we review the trial court's findings of fact *de novo* on the record, presuming those findings to be correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). A reviewing court should give "great weight to the decisions of the trial court in dividing marital assets" and should be "disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." ***Keyt v. Keyt***, 244 S.W.3d 321, 327 (Tenn. 2007) (quoting ***Herrera v. Herrera***, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)). Trial courts have broad discretion in determining the amount of

---

[10]Cognizant of the fact that Wife, a non-attorney, is representing herself on appeal, we will address issues fairly raised in the body of her brief as well as those formally set out in the "Statement of the Issues" section of her appellate brief, provided that they were first raised to the trial court below.

alimony, if any, and the type of alimony to be awarded in view of the circumstances of each particular case, and such awards will not be disturbed absent an abuse of that discretion. *See Broadbent v. Broadbent*, 211 S.W.3d 216, 219-20 (Tenn. 2006); *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997). Moreover, the trial court is in the best position to assess the demeanor of the witnesses and to make judgments regarding the credibility of these witnesses. To the extent that a trial court's decision was based on witness credibility, we will not reverse that decision absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). The trial court's conclusions of law are reviewed *de novo*, with no presumption of correctness. *Keyt*, 244 S.W.3d at 327 (citing *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002)).

## ANALYSIS

We consider first Wife's argument that the trial court erred by awarding Husband the entire value of his interest in his business, Worldwide, and thus essentially treating the business as Husband's separate property. In response, Husband notes that the trial court in fact classified Husband's interest in Worldwide as a marital asset.

From our review of the trial court's order, it is clear that the trial court in fact classified Husband's interest in Worldwide as a marital asset. We interpret Wife's argument as essentially a contention that the trial court erred in awarding this asset to Husband as part of the overall division of the marital property.

In her brief, Wife stresses her testimony at trial to the effect that she helped Husband build this business as well as his earlier business ventures, and that her contributions to the family as a homemaker enabled him to travel and focus on his business and make it successful. She argues that she should have been awarded a portion of the value of Husband's interest, in recognition of her direct and indirect contributions.

Our legislature has recognized the value of a stay-at-home spouse to the overall well-being of the family and has indicated that such value should be taken into account in the event of divorce. *See* Tenn. Code Ann. § 36-5-121(i)(10) (2005). In this case, the trial judge explicitly recognized the value of Wife's contributions as a homemaker. Without question, Wife's contributions to the success of Husband's business ventures, both directly and indirectly as a homemaker, are of value and should be considered in the division of marital property.

However, the trial court's award with respect to this single asset must be viewed in the context of the trial court's overall division of the marital estate. *See Carpenter v. Carpenter*, No. W2007-00992-COA-R3-CV, 2008 WL 5424082, at *9 (Tenn. Ct. App. Dec.

31, 2008) (citing ***Eganey v. Eganey***, No. M2005-01755-COA-R3-CV, 2006 WL 3740792, at \*5 (Tenn. Ct. App. Dec. 19, 2006)). In this case, the parties' debts far outweighed their assets. In the division of the marital estate, Husband was ordered to pay 100% of the marital debts, totaling over $50,000, not including the mortgage on the marital home. Husband's interest in Worldwide was valued at only $7,900. Considering the award to Husband of his interest in Worldwide in the context of the trial court's overall allocation of both the marital property and the debt, and giving "great weight" to the trial court's division of the marital assets, we find no error in the trial court's decision. ***See Keyt***, 244 S.W.3d at 327 (quoting ***Herrera v. Herrera***, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996).

Wife argues next that the trial court erred in accepting Husband's testimony on the valuation of his interest in Worldwide. She argues that he should not have been permitted to testify as an expert and that his testimony was self-serving and biased. She asks this Court to remand the issue to the trial court to permit the introduction of appropriate evidence.

In response, Husband contends that, as the owner of the property, he was properly permitted to give his opinion of the value of the business. ***See Sides v. Sides***, No. 02A01-9611-CV-00277, 1997 WL 630002, at \*2 (Tenn. Ct. App. Oct. 14, 1997) (citing ***Blackburn v. Murphy***, 737 S.W.2d 529, 532 (Tenn. 1987)). He notes that Wife failed to present any evidence at all on the value of the business.

The valuation of a marital asset is a question of fact, and the trial court's valuation is given great weight on appeal. ***Powell v. Powell***, 124 S.W.3d 100, 103 (Tenn. Ct. App. 2003). The valuation "is determined by considering all relevant evidence regarding value and the burden is on the parties to produce competent evidence of value." ***Id.*** at 104. In this case, the trial court's acceptance of Husband's testimony on the valuation was based on its assessment of Husband's credibility, an assessment that is accorded great deference on appeal. ***Id.*** at 105. However, the trial court's acceptance of Husband's valuation was also driven by the fact that Wife presented no evidence at all on the issue. The trial judge was under no obligation to order the introduction of further evidence on this issue. Overall, we find no error in the trial court's decision to permit Husband to testify as to the value of his interest in Worldwide or in the trial court's ultimate factual finding on the valuation.

Wife also insists on appeal that the trial court erred in accepting Husband's testimony that his compensation from Worldwide was comprised of only his salary of $12,800 per month. She argues to this Court, as she did to the trial court, that Husband failed to disclose additional compensation in the form of perquisites, such as a company car, a credit card to be used for personal expenses, and the like. Wife contends that the trial court's finding that Husband's income was no more than $12,800 per month resulted in an award of child support, based on that income level, that was lower than it should have been.

In response, Husband argues that, again, Wife put on no evidence to support her contention that Husband received other undisclosed benefits of value from Worldwide.[11] We must agree. Although Wife made generalized allegations in her testimony, she provided no specifics or evidence, despite questions from the trial judge regarding the value of any additional benefits received by Husband. We must conclude that the trial court did not err in finding Husband's gross income from Worldwide to be $12,800 per month. As the award of child support was calculated under the Guidelines based on this level of income, we find no error in the award of child support.

Wife argues that the trial court awarded her inadequate alimony, given her lack of earning capacity and the great disparity in the parties' income and ability to earn. In response, Husband argues that the trial court considered Wife's lack of earning capacity, and that it was the basis of the trial court's award of alimony *in futuro* and its rejection of Husband's contention at trial that she should be awarded only rehabilitative alimony of $1000 per month for three years.

Under Tennessee Code Annotated § 36-5-121(i), the court is to consider the following factors in determining alimony:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;
(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property;

---

[11]Husband testified that he was purchasing from Worldwide the three company vehicles in question, one driven by Husband, another driven by Wife, and the third driven by the parties' daughter. The trial court accepted Husband's testimony on this point.

(9) The standard of living of the parties established during the marriage;
(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i) (2005). While all of the statutory factors are significant, the two most important factors are the obligor spouse's ability to pay and the disadvantaged spouse's need. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

The trial court below rejected Husband's argument that Wife could be rehabilitated, finding that Wife is clearly an economically disadvantaged spouse. The trial court's finding in this regard was supported by the overwhelming weight of the evidence at trial, and Husband does not dispute it on appeal.

In his Rule 14 memorandum and affidavit on his income and expenses, submitted to the trial court below, Husband listed gross income of $12,800 per month, with his net income being $10,724 per month. He listed expenses of $8,090 per month,[12] which included the two mortgages on the marital home (totaling $5275 per month) and various expenses associated with a large, expensive home, such as homeowners' association fees, lawn care, security system, and maintenance.

In the final decree, of course, Husband was ordered to sell the marital home.[13] After he does so, we can assume that his housing expense will be dramatically less than the current

---

[12]These expenses included payment of the parties' marital debt, but did not include court-ordered child support.

[13]At oral argument, the parties indicated that the marital home had not yet been sold. From our review of the record, the award of the home to Husband, and the order requiring Wife and the parties' son to vacate the home, was done solely to expedite putting the house on the market and selling it. All parties, and the trial court, contemplated that the sale would likely result in a loss; however, the trial court's award to Wife of half of any profits on the sale becomes illusory if the sale does not in fact occur. Issues surrounding Husband's failure to expeditiously sell the house remain in the jurisdiction of the trial court, and the parties may raise any concerns about it to the trial court. However, for purposes of this appeal, we assume that Husband is making good faith efforts to sell the house, and that it will in fact be sold in the immediate future.

$5000 plus per month mortgage on a home he valued at $685,000.[14] Even with the current mortgage and other expenses associated with the marital home, Husband's Rule 14 filings showed that his net income exceeded his expenses by over $2,600 per month. Without the exorbitant expense of the parties' marital home, Husband's income will even further exceed his expenses.

Against this backdrop, we consider the award of alimony. In the trial court below, Wife was awarded alimony *in futuro* of $2,000 per month until January 1, 2011, and thereafter $1500 per month. This award was based in part on the trial court's finding that, although Wife should be able to find some type of employment once she obtains her college degree, "it's not going to be at the level that [Husband] was able to support her." Wife, as the parties' son's primary residential parent, was also awarded child support of $1334 per month. Thus, until January 1, 2011, to pay for the housing and living expenses of Wife and the parties' son, Wife will receive a total of $3334 per month. After January 1, 2011, the total drops to $2834 per month. When the parties' son reaches majority in 2013, Wife's total support will drop to $1500 per month.

We now consider the statutory factors as applied to the evidence in the record. As to the parties' relative earning capacity, Husband earns a generous salary of $12,800 per month as president and CEO of his company, while Wife has very limited earning capacity. Tenn. Code Ann. § 36-5-121(i)(1) (2005). Husband has earned a graduate degree, an MBA, and Wife completed only two years of college. *Id.* at (i)(2). The parties' marriage was of long duration, twenty-one years. *Id.* at (i)(3) Both parties are the same age, 50 at the time of trial. *Id.* at (i)(4). Wife testified that she has a physical disability that prevents her from doing the type of work she has done in the past. Husband put on no evidence to refute her assertion or to indicate that he has any physical impairment. *Id.* at (i)(5). Wife is the minor child's primary residential parent, which impacts her ability to work and her ability to further her education. *Id.* at (i)(6). The parties had no separate assets. *Id.* at (i)(7). As to marital debt, Husband was, of course, ordered to assume the marital debt; however, excluding the mortgages on the marital home, Husband's Rule 14 pleadings indicate that half of the debt Husband assumed was to his business, Worldwide. *Id.* (i)(8). As to marital assets, there were virtually none for the trial court to award to Wife for her to utilize to support herself, to fund her retirement, or even to replace the 5-year-old vehicle she was awarded. Indeed, the final decree even required Wife to vacate the marital home in order to expedite its sale, leaving her and the parties' son without a house in which to live. *Id.* The standard of living enjoyed by the family during the parties' marriage was high, as exemplified by their purchase of such an expensive home. *Id.* at (i)(9). Finally, Husband made substantial monetary contributions to the family as the breadwinner. Wife also made substantial contributions as

---

[14]The marital home has approximately 5800 square feet and has five bedrooms.

a homemaker, which allowed Husband to focus on his business and increase his earning capacity, and simultaneously adversely impacted Wife's own earning capacity. *Id.* at (i)(10).

Considering all of these factors, with particular emphasis on Wife's need and Husband's ability to pay, we must conclude that the trial court's award of alimony to Wife is clearly insufficient to support her in a reasonable manner. We put particular emphasis on the duration of the marriage, Wife's relatively low earning capacity, Husband's considerable net income once the marital home has been sold (which was anticipated to be soon at the time of the trial in December 2008), the parties' standard of living during the marriage, and the lack of assets from which Wife can fund retirement or even savings for an emergency. In light of these factors, we modify the award of alimony *in futuro* to $4,000 per month, retroactive to the date of the final decree, until January 1, 2011,[15] and thereafter $3,500 per month. We are mindful that alimony is not intended to place an economically disadvantaged spouse on equal footing with the other, or to allow the spouse to live in the same manner to which she was accustomed during the marriage. *See Crabtree v. Crabtree*, 16 S.W.3d 356, 359 (Tenn.2000); *Robertson v. Robertson*, 76 S.W.3d 337, 340 (Tenn. Ct. App. 2002). However, on the undisputed facts, this modified alimony award will come closer to serving the purpose of an *in futuro* award, which is to "mitigate the harsh realities of divorce" and "to provide financial support to a spouse who cannot be rehabilitated." *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001).

Wife argues next that the trial court erred in failing to award her damages for the personal injuries she sustained as a result of the domestic altercation in February 2007. Husband notes that Wife did not include a request for such damages in her pleadings, and argues that she was precluded under Rule 54.03 of the Tennessee Rules of Civil Procedure from recovering on such a claim where Husband had no opportunity to assert defenses to it.

Although Wife's claimed physical disability can be taken into consideration with respect to support issues, we agree that Wife is precluded from recovering on a separate claim for damages where no such claim was asserted in her pleadings. We find no error in the trial court's decision on this issue.

Finally, Wife contends that the trial court erred in granting Husband a divorce on the grounds of Wife's alleged inappropriate marital conduct. Husband notes that the final decree in fact declares the parties divorced based on a stipulated ground, pursuant to Tennessee Code Annotated § 36-4-129(a). We find no error in the trial court's decision to declare the parties divorced pursuant to the statute.

---

[15]Wife testified that she anticipates completing her online college course work by this date.

**CONCLUSION**

The trial court's award of alimony *in futuro* is modified to $4,000 per month, retroactive to the date of the final decree, until January 1, 2011, and thereafter to $3,500 per month. The cause must be remanded to the trial court to determine a payment schedule for the past due amounts. The final decree is affirmed in all other respects.

The decision of the trial court is affirmed as modified. Costs on appeal are assessed against Appellee Evan Ethelread Arrindell, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE