IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 21, 2003 Session

## CHRISTOPHER NASH POWELL v. PATSY CONLEY POWELL

**Direct Appeal from the Chancery Court for Haywood County**
**No. 11937     George R. Ellis, Chancellor**

---

**No. W2002-00421-COA-R3-CV - Filed April 7, 2003**

---

This case involves the proper valuation and division of marital property, the propriety of the award of sanctions and attorney's and expert witness' fees. We affirm the trial court's valuation and division of the marital property. We reverse the award of fees and the imposition of sanctions as the sanction imposed exceeded the authority of the trial court. We remand the case for further proceedings to include consideration of the imposition of a sanction within the court's authority.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which DAVID G. HAYES, SP. J. and FRANKLIN MURCHISON, SP. J., joined.

Daniel Loyd Taylor and Amy R. Harden, Memphis, Tennessee, for the appellant, Christopher Nash Powell.

William L. Bomar and Joy T. Bomar, Memphis, Tennessee, for the appellee, Patsy Conley Powell.

### OPINION

The parties were married on April 2, 1997, after dating for seven months. It was not the first marriage for either party. Mrs. Powell was granted an absolute divorce as of December 17, 2001, on the grounds of inappropriate marital conduct. The final decree of divorce was entered January 29, 2002.

The parties do not appear to agree on any matter, including the net worth of each individual party prior to the marriage, as well as Mrs. Powell's contributions to the check cashing business during the marriage. Mrs. Powell asserts that she loaned her husband money as well as paid most, if not all, of the couples expenses during the early days of the union. The greatest point of contention appears to be the valuation of Mr. Powell's interest in a check cashing

business.  Mr. Powell and his brothers own numerous check cashing outlets, all but one of which were opened during the course of the parties' marriage.[1]  Mr. Powell holds a minority share in the majority of these stores, with his greatest interest being fifty-percent (50%) in two stores.

As noted, the main source of contention is the valuation of Mr. Powell's interest in these check cashing stores.[2]  Both parties proffered expert opinion as to the valuation of the check cashing business.  Mr. Powell's expert, his CPA, valued the business at $385,482.00 while Mrs. Powell's expert, a CPA and certified valuation analyst, valued the business at $2,290,000.00.  Mr. Powell takes issue with this valuation, which the court accepted, since it does not reflect "fair market value" (FMV) as that term is defined in Revenue Ruling 59-60.  Mrs. Powell's expert valued the business as an on-going concern, and specifically for divorce purposes, which he admitted results in a valuation which does not reflect fair market value.

After hearing testimony from both experts, the trial court accepted the testimony of Mrs. Powell's expert as to the value of the business and awarded Mrs. Powell one-half of the increase in value of the store owned by Mr. Powell prior to the marriage, and one-half of the value of the stores acquired during the marriage, for a total of $1,119,000.00.  Mr. Powell was also ordered to pay Mrs. Powell's attorney's and expert witness' fees.

Additionally, the trial court found Mr. Powell in contempt for investing in two entities in violation of a status quo injunction.  The trial court awarded Mrs. Powell a one-half interest in these entities as a sanction, and required Mr. Powell to assume Mrs. Powell's indebtedness on these entities, as well as indemnify and hold her harmless on the same.  Mr. Powell filed a timely appeal in which he raises four (4) issues for our review.

### Issues

I..  Did the trial court err by adopting a formula for the valuation of Husband's business interests that does not reflect fair market value as defined by Revenue Ruling 59-60?

II.  Did the trial court err by failing to restore the parties to the positions they would have been in had this short marriage never taken place?

III.  Did the trial court err in finding Husband in contempt of court for investing in the Pinnacle Group and Front Line Security, and by awarding Wife one-half of the investment while assessing all debt in the investment to Husband?

---

[1] The trial court found that only one store was in operation at the time of the marriage.

[2] We refer to the interest in the stores as Mr. Powell's since it appears that Mrs. Powell is not a record owner of any of the stores.  Despite this fact, Mr. Powell's interest in all but one of the stores is clearly marital property, and thus would be correctly labeled as the Powells' interest.

IV. Did the trial court err by awarding Wife one hundred percent (100%) of her attorney fees and expert witness fees?

### *Valuation of Husband's Business Interest*

Contrary to the Appellant's contention that this poses a question of law requiring a ***de novo*** review, our courts have determined that the determination of the value of a marital asset is a question of fact. ***Kinard v. Kinard***, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). Accordingly, "a trial court's decision with regard to the value of a marital asset will be given great weight on appeal." ***Wallace v. Wallace***, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987); Tenn. Rule App. P. 13(d).

Appellant contends that the trial court erred "by adopting a formula for the valuation of Husband's business interests that does not reflect fair market value as defined by Revenue Ruling 59-60." We disagree.

The bulk of the stores at issue were formed by Mr. Powell and others as Limited Liability Companies (LLCs). This Court has not had occasion to address the question of how to properly value an LLC for the purpose of dividing marital assets. We believe, however, that for such valuation purposes, our discussion of how to properly value a closely held corporation is instructive.

This Court addressed the question of how to properly value a closely held corporation for the purpose of dividing marital assets in the case of ***Wallace v. Wallace***, 733 S.W.2d 102 (Tenn. Ct. App. 1987). The ***Wallace*** court opined that "[d]etermining the value of a closely held corporation is not an exact science[,]" ***Wallace***, 733 S.W.2d at 107, and that

> ***[t]here are a number of acceptable methods available to determine the value of a corporation***. ***Blasingame v. American Materials Inc.***, 654 S.W.2d 659, 666 (Tenn. 1983) recognized three of these methods: (1) the market value method, (2) the asset value method, and (3) the earnings value or capitalization of earnings method. ***There are still others*** including . . . the liquidating value method. ***See*** B. Goldberg, Valuation of Divorce Assets §§ 6.5-6.8 (1984). The choice of the proper method or combination of methods depends upon the unique circumstances of each corporation.

***Wallace***, 733 S.W.2d at 107 (emphasis added).

The court goes on to state that

> [t]he courts have not articulated a consistent approach to the valuation of this type of marital asset. However, Rev. Rul. 59-60, 1959-1 C.B. 237 has been recognized as providing the most comprehensive guide to making this determination. B.

> Goldberg, *Valuation of Divorce Assets* **§§ 1.12 & 6.6 (1984) and 24 Am. Jur.2d**
> **Divorce and Separation § 947 (1983).** *But Rev. Rul. 59-60 is intended to be only*
> *a guide. It was never intended to be an inflexible rule.* *Turgeon v. Turgeon*, 190
> Conn. 269, 460 A.2d 1260, 1265 (1983).

*Wallace*, 733 S.W.2d at 107 (emphasis added).

We believe these statements to be equally applicable in the present case, where the business entity involved is an LLC controlled by a small group of family members. In short, neither *Wallace*, nor any other case we are aware of, mandates the use of Rev. Ruling 59-60 as the basis for determining the value of a party's interest, be it in a closely held corporation or an LLC, for the purpose of marital property division.[3] Accordingly, the trial court acted within its discretion in considering Mrs. Powell's expert's testimony, notwithstanding the methodology supporting such testimony.

The value of marital property is determined by considering all relevant evidence regarding value and the burden is on the parties to produce competent evidence of value. *Id.* It is apparent that in reaching its valuation determination, the trial court relied heavily upon the testimony of Mrs. Powell's expert, Mr. Vance, and thus found Mr. Vance's valuation to be more credible than that of Mr. Powell's expert, Mr. Noble. "Unlike this Court, the trial court observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). The trial court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). The record supports the trial court's use of Mrs. Powell's expert's testimony as opposed to that of Mr. Powell's.[4]

The expert testimony was not the only evidence presented as to the value of the check cashing business, however. Additional evidence, in the form of financial statements which Mr. Powell submitted to various financial institutions, was also presented. In these statements, Mr. Powell represented the value of his interest in the check cashing business to be $3,370,000.00 as of February 7, 2001,[5] ten months prior to the grant of the divorce. Mr. Powell now asserts that

---

[3]In his brief, Appellant fails to cite a single case supporting this contention.

[4]Suffice it to say that Mr. Powell's expert's qualifications paled in comparison to those of Mrs. Powell's expert.

[5]Mr. Powell had placed the value of the business at $595,000.00 as of March 18, 1997, approximately two weeks prior to the parties marriage when there was one store open. Assuming this to be the value of the one store prior to the parties entering into marriage, and using the $3,370,000.00 figure as the value of Mr. Powell's interest in all of the stores as of the date of divorce, this leads to the conclusion that the value of the business, which would include the
(continued...)

these financial statements overstated the true value of his business.[6] Such assertions notwithstanding, "any statement, whether oral or written, made by or attributable to a party to an action, which constitutes an admission against his interest and tends to establish or disprove any material fact in the case, is competent evidence against him in such action." *Dailey v. Bateman*, 937 S.W.2d 927, 930 (Tenn. Ct. App. 1996) (quoting *Jones v. Lenoir City Car Works*, 392 S.W.2d 671, 673 (Tenn. 1965)).  Accordingly, these financial statements were properly considered by the trial court as evidence of the value of the check cashing business.

"The value of a marital asset is determined by considering all relevant evidence regarding value." *Wallace*, 733 S.W.2d 102, 107 (citations omitted).  If the evidence of value is conflicting, the trial judge may assign a value that is within the range of values supported by the evidence.  *See Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995).  In this instance, the financial statements provided by Mr. Powell are evidence which more strongly supported the valuation placed on the business by Mrs. Powell's expert, as opposed to that of Mr. Powell's expert.

Accordingly, we hold that the evidence does not preponderate against the trial court's finding that Mrs. Powell's expert's testimony as to the value of Mr. Powell's interest in the check cashing enterprise, coupled with Mr. Powell's own representation as to that value, accurately reflect the true value of his interest in the business.  *See* Tenn. Rule App. P. 13(d).

### *Placement of Parties in Position they would have been in if Marriage had not occurred.*

---

[5](...continued)
value of all the stores started during the marriage, as well as the increase in value of the store started prior to the marriage, increased $2,775,000.00 during the course of the marriage.  We note that the legislature has deemed "Marital property" to include "all real and personal property, both tangible and intangible, *acquired by either or both spouses during the course of the marriage* . . . ."  Tenn. Code Ann. § 36-4-121(b)(1)(A) (Supp. 2002).  We also note that Appellant, who on one hand asserts that these financial statements are inaccurate, on the other hand urges this Court to accept them as true for purposes of determining his total assets at the time of the marriage.

[6]While the document referred to does not state that Mr. Powell was providing the information requested under penalty of perjury, we note that Tenn. Code Ann. § 39-14-120 (1997) entitled "Issuing false financial statement" provides that:

(a)  A person commits the crime of issuing a false financial statement who, with intent to defraud:
(1)  Knowingly makes or utters a written instrument which purports to describe the financial condition or ability of the person or some other person to pay and which is inaccurate in some material respect; or
(2)  Represents in writing that a written instrument purporting to describe a person's financial condition or ability to pay is accurate with respect to that person's current financial condition or ability to pay, knowing or having reason to believe the instrument to be materially inaccurate in that respect.
(b)  Issuing a false financial statement is a Class B misdemeanor.

Tenn. Code Ann. § 39-14-120 (1997).

Appellant argues that, due to the short duration of the marriage, the parties should be placed in the position they would have been in had the marriage never taken place. ***Batson v. Batson***, 769 S.W.2d 849 (Tenn. Ct. App. 1988), is cited in support of this argument. We disagree with this contention and, for the following reasons, affirm the decision of the trial court as to the division of the interest in the check cashing business.

At the outset, we note that Appellant stresses the extent of Mrs. Powell's contribution to the check cashing business, claiming that her alleged lack of participation somehow negates her right to share in the increase in value of the business. To properly address Mr. Powell's claims that ***Batson*** is controlling in this case, it is necessary to differentiate between the two classes of marital property recognized by the legislature. Tenn. Code Ann. § 36-4-121(b)(1)(a) defines "Marital property" as "all real and personal property, both tangible and intangible, ***acquired by either or both spouses during the course of the marriage***. . . ." Tenn. Code Ann. § 36-4-121(b)(1)(A) (Supp. 2002). This section does not require any contribution by the spouse, merely that the property be acquired during the marriage. However, marital property is also defined as "income from, and any increase in value during the marriage of, property determined to be separate property . . . ." ***Id***. § 36-4-121(b)(1)(B) (Supp. 2002). Such property is deemed to be marital property "***if each party substantially contributed to its preservation and appreciation*** . . . ." ***Id.*** Accordingly, the stores opened during the marriage are clearly marital property subject to an equitable division, while the increase in value of the store opened prior to the marriage is marital property subject to division if Mrs. Powell "***substantially contributed to its preservation and appreciation***. . . ." ***Id.***

The code provides that "'substantial contribution' may include, but is not limited to, direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine." ***Id***. § 36-4-121(b)(1)(D) (Supp. 2002). Therefore, it was within the trial court's discretion, if it found that Mrs. Powell made such a contribution, to consider any increase in value of the store Mr. Powell owned prior to the marriage to be marital property. The trial court found that Mrs. Powell took "active involvement in the growing of the check cashing businesses." The trial court also found that "[t]hough the Powells both have [sic] involvement in starting of the stores, neither has spent a day running one." From this statement it appears that the trial court considered the contribution of both parties to the success of the business to be minimal at best, but nonetheless equal. Our review of the record supports this conclusion.

As noted, Appellant appears to argue that ***Batson*** mandates that, in a marriage of short duration, the parties be returned to the position they would have been in had the marriage never occurred. We cannot agree that ***Batson*** mandates such a result in this case. First, we note that Mr. Powell's argument that the parties should be placed in the position that they would have been in if the marriage had never occurred presupposes that he would enjoy the same financial position today had he and Mrs. Powell never married. While this may be so, there is also substantial evidence in the record to shed serious doubt on this contention, including a letter from

Mr. Powell claiming that if he had not met and married Mrs. Powell that "I would probably be dead now."

The ***Batson*** court decided against an equal division of the marital property and instead found that the Batsons "should, in large measure, be restored to their pre-marriage financial condition." ***Batson***, 769 S.W.2d at 859. In making the property division the ***Batson*** court noted that such a division "leaves the parties with approximately the same net worth they had prior to the marriage and preserves, in large measure, the relationship between their respective net worths that existed [at the time of the marriage]." ***Id***. at 861. In the instant case, as the business at issue is clearly marital property, which has experienced a significant increase in value during the course of the marriage, it would be impossible to divide the marital property in a manner which would "leave the parties with approximately the same net worth they had prior to the marriage. . . ." ***Id.*** The trial courts division of the marital property, including the equal division of the value of the business, does, however, "preserve the relationship between [the parties] respective net worths" as they existed prior to the marriage. ***Id.***

Appellant's assertions to the contrary notwithstanding, we find the rationale of ***Batson*** to have little, if any, precedential value under the specific facts of this case. As stated in ***Batson***, "[a]n equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." ***Batson*** 769 S.W.2d at 859. The major difference between Batson and the case *sub judice* is that "the majority of the marital estate in ***Batson*** consisted of an increase in the value of Husband's separate property during the course of the marriage." ***Hofer v. Hofer***, No. 02A01-9510-CH-00210, 1997 Tenn. App. LEXIS 74, at *13 (Tenn. Ct. App. Feb. 3, 1997) (***no perm. app filed***). In the present case, the majority of the estate consists of the value of the stores acquired during the marriage, which are clearly marital property.[7] Thus, while the legislature included the duration of the marriage as a factor to be

---

[7]***Batson*** cites the Oregon case of ***In re Marriage of McInnis***, 661 P.2d 942, 943 (Or. Ct. App. 1983), for the proposition that "[i]n cases involving a marriage of relatively short duration, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place." ***Batson***, 769 S.W.2d at 859. ***McInnis*** involved "a short- term marriage of four months. . . ." ***McInnis***, 661 P.2d 942 at 943. The ***McInnis*** court, in making the aforementioned statement concerning marriages of short duration, cites to another Oregon case, ***In re Marriage of York***, 569 P.2d 32 (Or. Ct. App.1977). The ***York*** court, however, precedes the aforementioned generalization concerning short term marriages with the statement that "both parties should share in the increase in value of marital assets. . . ." ***York***, 569 P.2d at 33. ***Batson*** also cites the Oregon case of ***In re Marriage of Peru***, 641 P.2d 646 (Or. Ct. App. 1982), for the proposition that "[w]hen relatively short marriages are involved, each spouse's contribution to the accumulation of assets during the marriage is an important factor." ***Batson***, 769 S.W.2d at 859. It is important to note that the ***Peru*** court follows this assertion with the statement that "[h]owever, it is also true that even in a marriage of short duration, both parties are entitled to share in any increase in value of marital assets." Peru, 641 P.2d at 647 (citing ***York***, 569 P.2d at 32). Thus, a review of the cases upon which ***Batson*** relies supports our determination that ***Batson*** is not controlling in a case such as the one presented here, where the bulk of the marital estate consists of property acquired during the course of the marriage, and the parties contributed equally to such property's increase in value.

considered when dividing marital property,[8] this factor is of little weight in the present case where the parties contributed equally, albeit minimally, to the acquisition and increased value of the subject property. Conversely, had all the stores been owned by Mr. Powell prior to the marriage, the short duration of the marriage would carry more weight in guiding the trial court's decision as to what would constitute an equitable division of the business. Obviously, the longer the marriage, the greater the opportunity for a spouse to make a "significant contribution" to the increase in value of what was once separate property, thereby entitling the spouse to a share in the increased value of such property.

As this case centers on the division of what is clearly marital property, which the trial court found both parties to have contributed equally to the acquisition and increase in value of, we find no error in the trial court's decision to equally divide the value of the business between the parties. The trial courts award is, therefore, affirmed.

### *Finding of Contempt*

As part of the Final Decree of Divorce, the trial court found that

> [Mr.] Powell is in violation of the status quo injunction by investing in Frontline Security and Pinnacle Group after the injunction was issued. The Court, therefore, awards [Mrs.] Powell one-half (½) interest in [Mr.] Powell's interest in each investment and orders [Mr.] Powell to assume her indebtedness, if any, and to indemnify and hold her harmless on same.

Section 29-9-103 of the Tennessee Code Annotated sets forth the general rule regarding punishment for contempt, as follows:

> (a) The punishment for contempt may be by fine or by imprisonment, or both.
>    (b) Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($ 50.00), and imprisonment not exceeding ten (10) days, and, except as provided in § 29-9-108, all other courts are limited to a fine of ten dollars ($ 10.00).

Tenn. Code Ann. § 29-9-103 (2000).

The propriety of punishment awarded for contempt is reviewed under an abuse of discretion standard. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993)(citing *Robinson v. Air Draulics Eng'r Co.*, 377 S.W.2d 908, 912 (1964)).

---

[8]"In making equitable division of marital property, the court shall consider all relevant factors including. . . [t]he duration of the marriage." Tenn. Code Ann. § 36-4-121(c)(1) (Supp. 2002). We note that, while this factor appears first, this should not be interpreted to mean that this factor should always carry more weight than the others. The factors are not listed in order of importance, and each is to be considered in relation to the specific facts of each case.

The trial court in the instant case is a chancery court and thus was not authorized by Tenn. Code Ann. section 29-9-103 to impose a fine for contempt against Mr. Powell in excess of $50.00. As stated above, the trial court ordered Mr. Powell to surrender one-half of his interest in the investments to Mrs. Powell, with Mr. Powell assuming her indebtedness and indemnifying her in the case of loss. Mr. Powell argues that the trial court, in making such an award, exceeded its authority. Mrs. Powell contends, however, that the trial court was authorized to award Mrs. Powell one-half of Mr. Powell's interest in said investments under Tenn. Code Ann. section 29-9-105, which provides that "[i]f the contempt consists in the performance of a forbidden act, the person may be imprisoned until the act is rectified by placing matters and person in status quo, or by *the payment of damages*." Tenn. Code Ann. § 29-9-105 (2000) (emphasis added).

While Mrs. Powell asserts that she *may* suffer damages in the future as a result of these investments, such speculation does not merit the trial court's award, as it was not tied to any specific damages which she has suffered as a result of Mr. Powell's act of contempt. Accordingly, as Mrs. Powell suffered no quantifiable damages as a result of Mr. Powell's actions, the trial court lacked the authority to award Mrs. Powell the relief that it did.

We agree, however, that Mr. Powell was clearly in contempt and, on remand, the trial court may consider actions within its authority in regard to this matter.

### *Award of Legal Fees*

In an order entered January 29, 2002, the trial court ordered that Mr. Powell pay Mrs. Powell "her legal fees . . . together with her accounting witness fees . . . as alimony in solido." These costs amounted to $ 98,523.00.[9] Mr. Powell asserts that the award of these fees was improper because Mrs. Powell has the financial ability to pay these costs herself.

Attorney's fees constitute alimony *in solido*, and Tenn. Code Ann. § 36-5-101(d)(2002) sets forth the relevant factors to consider when making an alimony award. *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992). Need is the critical factor to be considered in making an award of alimony, and an award of attorney's fees is proper when one spouse is disadvantaged and does not have sufficient resources with which to pay attorney's fees. *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. App. 1984); *Thompson v. Thompson*, 797 S.W.2d 599 (Tenn. App. 1990). As the award of witness fees also took the form of alimony, need would also be the controlling factor in determining the propriety of an award of such fees. In *Fox v. Fox*, 657 S.W.2d 747 (Tenn. 1983), our supreme court stated:

> The right to an allowance of legal expenses is not absolute. It is conditioned upon a lack of resources to prosecute or defend a suit in good faith. This rule is to enable the wife, when destitute of means of her own, to obtain justice and to prevent its denial. . . . If a spouse does not have separate property of her own which is adequate to

---

[9]This figure represents $66,960.00 for legal fees and $31,563.00 for witness fees.

> defray the expenses of suit, certainly she should not be denied access to the courts
> because she is unable to procure counsel.

*Fox*, 657 S.W.2d at 749 (internal citation omitted).

Additionally, "[w]here . . . the final decree does not provide funds out of which counsel may reasonably be paid, it is in order for the Court to award to the wife as additional alimony such amount as will reasonably enable her to pay reasonable compensation to her counsel." *Ligon v. Ligon*, 556 S.W.2d 763, 768 (Tenn. Ct. App. 1977).

In the instant case Mrs. Powell did not lack resources to prosecute her suit and the final decree certainly provides funds out of which these attorney and witness fees may be paid. The award of attorney's fees and witness fees to Mrs. Powell was, therefore, in error and is reversed.

### *Conclusion*

For the foregoing reasons we affirm the trial court's division of marital property. We reverse the award of attorney's and expert witness' fees, and the sanction imposed upon Mr. Powell for contempt. We remand the case for further proceedings not inconsistent with this opinion. The costs of this appeal are taxed to the Appellant, Mr. Powell, and his surety for which execution, if necessary, may issue.

_____
DAVID R. FARMER, JUDGE