FILED
04/14/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 2025 Session

## TODD MICHAEL PERKINS v. ELIZABETH MUNDY (PERKINS) SLOANE

**Appeal from the Circuit Court for Sumner County**
**No. 2021-CV-600      Joe Thompson, Judge**

_____

### No. M2024-00756-COA-R3-CV

_____

A husband and wife divorced a little over two years after marrying. On appeal, the wife asserts the trial court erred when it classified five real properties as the husband's separate property. The wife also takes issue with the court's division of attorney's fees and requests her fees on appeal. We find the court failed to make adequate findings related to its division of attorney's fees. Therefore, we vacate the portion of the order relating to fees and expenses and remand the matter for the court to make additional findings. We affirm the trial court in all other aspects and decline to award the wife her attorney's fees incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Russell E. Edwards, Hendersonville, Tennessee, for the appellant, Elizabeth Ann Mundy Perkins Sloane.

William L. Moore, Jr., Gallatin, Tennessee, for the appellee, Todd Michael Perkins.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

Todd Perkins ("Husband") and Elizabeth Sloane ("Wife") were married in December 2018 and had been married for just over two and a half years when Husband filed for divorce in July 2021. The parties had no children together. At the time of the

divorce, Wife was employed as a hairdresser, and Husband worked as a nurse anesthesiologist. Husband previously lived in Indiana and completed his education in Tennessee. The parties stipulated to the entry of a divorce decree, which the Sumner County Circuit Court entered on March 24, 2022. The court reserved the division of the parties' property for a later hearing, which took place on October 4 and 5, 2023.

At the final hearing, the sole remaining issue was the classification and division of the parties' property. The parties had previously agreed to divide most of their personal property and retirement accounts. The bulk of the property to be classified consisted of five properties that had been purchased during the marriage. The court was, therefore, left to determine whether these five pieces of real property were part of the marital estate. Because of this, the evidence at the hearing consisted primarily of testimony regarding these properties.

Husband testified that, before the parties' marriage, he owned a property in Fort Wayne, Indiana and that he subsequently sold this property to help pay for his education. After graduating from a nurse anesthesiologist program in Tennessee, Husband returned to Indiana and purchased a second property there, which he and the court called "Baldham." Husband testified that he purchased the Baldham property with funds from the sale of the previous Indiana home. Husband sold Baldham in October 2019 and began purchasing the five properties at issue.

Husband purchased the first property in October 2019 using funds from the sale of Baldham. This property, located at Switchboard Road in Portland, Tennessee ("the Switchboard property"), was titled in both parties' names. Husband testified that the joint title was due to his real estate agent telling him that properties needed to be titled in both parties' names when purchasers of property are married. Both parties are also listed on this property's mortgage.[1] Husband then detailed his subsequent purchases of the remaining four properties, which were identified as follows: a property on Reed Street in Portland, Tennessee ("the Reed property"); a property on Cedar Grove Road in Cross Plains, Tennessee ("the Cedar Grove property"); a property on Murray Street in Gallatin, Tennessee ("the Murray property"); and a property on Gibson Street in Portland, Tennessee ("the Gibson property"). Husband testified that he purchased all of these properties using his separate funds and that the mortgages were solely in his name. The classification of these five properties is the primary issue in this appeal.

Husband testified that he rented the Switchboard, Reed, Murray, and Gibson properties (collectively "the rental properties") to various tenants, and he continued to live in the Cedar Grove property. Husband was questioned extensively regarding the separate bank account he maintained to accept rent payments from and pay for repairs for the rental

---

[1] In its findings of fact, the trial court erroneously stated that Wife was listed on the Cedar Grove property's mortgage.

properties. Husband also testified that he sometimes would use money from other bank accounts to pay for various expenses for the houses when rent was insufficient to do so.

In addition, Husband presented deposition testimony and a report ("the Vance report) from forensic accountant, Robert Vance, whom he hired to analyze Husband's bank records. This evidence showed that Husband had kept his accounts separate, including an account Husband maintained to manage funds from the four rental properties. James Samuels, a property appraiser hired by Wife, testified regarding his valuations of the five pieces of real property.

On April 29, 2024, the court entered a memorandum opinion in which it made factual findings regarding the parties' marriage and property. The court also found both Husband and Mr. Vance to be credible witnesses and adopted Mr. Vance's finding that Husband had maintained entirely separate financial accounts from Wife. After valuing the parties' four financial accounts it had classified as marital, the court divided them equally, awarding Wife $31,718.86.

The court next addressed how to classify and divide the five properties, stating that "The gravamen of this case lies with the classification and distribution of the marital estate and specifically, what weight the Court should accord the duration of the marriage among the thirteen factors that must be considered pursuant to T.C.A. § 36-4-121(c)(1) when dividing the marital property." After crediting the findings from the Vance report, the court determined that four of the five properties were Husband's separate property. The court undertook a separate analysis regarding the classification of the Switchboard property, finding that Husband had titled this property in both parties' names and that this created a presumption that Husband had gifted the property to the marital estate. However, the court found that Husband had rebutted this presumption through his actions during the marriage, concluding that "the Court specifically finds that neither transmutation nor commingling occurred with respect to any of the five pieces of real property, thus each remains Mr. Perkins['s] separate property."

The court next determined whether Wife should be awarded a portion of the increase in value of the properties because of her testimony that she contributed to their upkeep. However, the court found that Wife could not adequately recall the work she did or quantify her work on the houses and that any financial contributions she made were de minimis. Therefore, the court found that the increases in the values of the properties were Husband's separate property. Likening the matter to the case of *Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988), the court reasoned that the parties should be returned to their relative financial states from before the marriage and then analyzed the factors found in Tenn. Code Ann. § 36-4-121(c). The court also found that each party would be responsible for his or her discretionary costs, that Wife would be responsible for 75% of her attorney's fees, and that Husband would be responsible for his attorney's fees and the remaining 25% of Wife's attorney's fees.

The court entered a final order reflecting the memorandum opinion on May 22, 2024. Wife timely appealed and presents the following issues for our review: (1) whether the court erred in its classification of property; (2) whether the court erred in its division of the marital property; (3) whether the court erred in its award of attorney's fees; and (4) whether she should be awarded her attorney's fees incurred on appeal.

STANDARD OF REVIEW

We review a trial court's factual findings de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Baggett v. Baggett*, 422 S.W.3d 537, 542 (Tenn. Ct. App. 2013). Evidence preponderates against the trial court's factual findings when it "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). We review the court's conclusions on questions of law de novo without any presumption of correctness. *Id.*

ANALYSIS

## I. Classification of property

Wife first asserts that the court erred in classifying the five real properties as Husband's separate property. In Tennessee, as part of divorce proceedings, courts must classify the parties' property as either "marital" or "separate." *See generally* Tenn. Code Ann. § 36-4-121; *Lofton v. Lofton*, 345 S.W.3d 913, 922 (Tenn. Ct. App. 2008). "Marital" property is subject to equitable division, Tenn. Code Ann. § 36-4-121(a)(1), while "separate" property is not included in the marital estate and therefore, cannot be divided. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). The classification of property is a question of fact. *Id.* at 245.

The statute defines "marital property," in relevant part, as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage[.]" Tenn. Code Ann. § 36-4-121(b)(2)(A). This is in contrast to separate property, which is defined in relevant part as: "[a]ll real and personal property owned by a spouse before marriage;" "[p]roperty acquired in exchange for property acquired before the marriage[.]" *Id.* § 36-4-121(b)(4)(A)-(B). The income a separate property generates is considered marital "if each party substantially contributed to its preservation and appreciation." *Id.* § 36-4-121(b)(2)(B)(i).

A. Whether Husband used separate property to purchase the properties.

We begin our review by discussing two presumptions that serve as starting points when classifying property. The first presumption is derived from Tenn. Code Ann. § 36-4-121(b)(2)(A) and states that we presume assets acquired during the marriage are marital

property. *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *4 (Tenn. Ct. App. Sept. 1, 2006). However, parties can rebut this presumption by presenting evidence showing that an asset is the separate property of either spouse. *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007). Evidence showing that a piece of property fits into the definitions found in Tenn. Code Ann. § 36-4-121(b)(4) is sufficient to rebut this presumption. *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007). The burden of proving, by a preponderance of the evidence, that the asset is separate falls onto the party asserting that an asset acquired during the marriage is separate. *Id.* at 485-86. The second presumption, derived from Tenn. Code Ann. § 36-4-121(b)(4)(A), is that assets acquired by either spouse before marriage are considered separate property, *Fox*, 2006 WL 2535407, at *4, but separate properties can be changed to marital property through the doctrines of commingling or transmutation. *Smith v. Smith*, 93 S.W.3d 871, 878 (Tenn. Ct. App. 2002).[2]

In the present case, Husband successfully rebutted the presumption that the properties were marital by proving that the properties were all purchased "in exchange for property acquired before the marriage." *See* Tenn. Code Ann. § 36-4-121(b)(4)(B).[3] Husband submitted the Vance report to rebut this presumption. This report was prepared by a forensic accountant who analyzed Husband's financial accounts and the transactions through which he purchased the properties. This report and Mr. Vance's deposition testimony established that all the funds used to purchase the five properties could be traced back to the sale of the Baldham property in Indiana. The report concluded that it was Mr.

---

[2] As we have recently explained:

> Under the theory of commingling, separate property becomes marital property if it is "inextricably mingled with marital property or with the separate property of the other spouse." *Smith*, 93 S.W.3d at 878 (quoting 2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (1987)). Transmutation occurs when separate property is treated in a way that gives evidence "of an intention that it become marital property." *Id.*

*Tate v. Tate*, No. M2022-01438-COA-R3-CV, 2024 WL 1254702, at *4 n.2 (Tenn. Ct. App. Mar. 25, 2024).

[3] This Court has previously explained precisely this situation:

> Thus, for example, if one spouse acquires an asset during the marriage, the court will begin the classification analysis by presuming that the asset is marital property because it was acquired during the marriage. Tenn. Code Ann. § 36-4-121[(b)(2)(A)]. However, the spouse acquiring the asset may rebut the presumption by presenting evidence that the asset was "acquired in exchange for property acquired before the marriage." Tenn. Code Ann. § 36-4-121[(b)(4)(B)]. If the spouse acquiring the asset proves that it was, in fact, acquired in exchange for separate property, then the court will classify the asset as separate property even though it was acquired during the marriage.

*Fox*, 2006 WL 2535407, at *4 n.12 (statutory citations altered to show each provision's current location).

Vance's opinion that "Mr. Perkins has sufficiently maintained segregated, separate bank accounts in his sole name only that funded all four rental houses and the marital residence[,] and these five properties and the related bank accounts do not appear to have been comingled and transmuted."

The evidence submitted showed that the Baldham property fell into the definition of separate property found in Tenn. Code Ann. § 36-4-121(b)(4)(A), i.e., that Husband owned Baldham prior to the marriage. From this finding, the court found that Husband had purchased the five properties at issue using funds originating from the sale of his separate property or using the income from separate properties. This finding, combined with the court's finding that Wife had not substantially contributed to the properties' preservation and appreciation such that any income they generated was not included in the marital estate, meant that Husband used only his separate property to purchase the properties. Therefore, the initial property purchase fell under the definition of separate property found in Tenn. Code Ann. § 36-4-121(b)(4)(B), and the subsequent properties were purchased using residual funds from the Baldham sale or using rental income from the various subsequently purchased properties.

Wife's arguments to the contrary are unpersuasive as none of her arguments show evidence preponderating against these findings. Her first argument is that because the Baldham property was sold after the parties' marriage, the funds Husband received for its sale should be considered marital. This reasoning overlooks the fact that the Baldham property was purchased prior to the marriage, making any profit from that sale as being acquired in exchange for pre-marital property. Similarly, Wife's argument that Husband periodically paid for expenses for the properties with marital funds is unpersuasive. In circumstances where a spouse has used marital funds to improve separate property for significant amounts of time or used a significant amount of marital funds for improvements to separate property, this Court has found that the separate property was transmuted into marital property. Husband's testimony that he "sometimes" used marital funds for repairs to the various properties, during an approximately two-and-a-half-year marriage, does not establish that he used a significant amount of marital funds that would substantiate a finding of transmutation. *See Lewis v. Lewis*, No. W2019-00542-COA-R3-CV, 2020 WL 4668091, at *4 (Tenn. Ct. App. Aug. 11, 2020) (collecting cases regarding when evidence was sufficient to substantiate a finding of transmutation: "*Wright v. Wright*, No. W2018-02163-COA-R3-CV, 2020 WL 1079266, at *11 (Tenn. Ct. App. Mar. 6, 2020) (expenditure of marital funds 'was sufficient to transmute the entirety into marital property'); *Carter v. Browne*, No. W2018-00429-COA-R3-CV, 2019 WL 424201, at *12 (Tenn. Ct. App. Feb. 4, 2019) (mortgage 'frequently paid' with marital funds); *Givens v. Givens*, No. E2016-00865-COA-R3-CV, 2017 WL 4339489, at *9 (Tenn. Ct. App. Sept. 29, 2017) (husband spent 'significant amounts of marital income on paying off and remodeling [the property]'); *Liner v. Liner*, No. M2010-00582-COA-R3-CV, 2011 WL 1420883, *3 (Tenn. Ct. App. April 13, 2011) (considering the fact that '[t]he mortgage and utilities for the home were paid out of [a] joint account'); *Daniel v. Daniel*, No. M2006-

01579-COA-R3-CV, 2007 WL 3202778, at *6 (Tenn. Ct. App. Oct. 31, 2007) (finding transmutation where '[t]he mortgage, insurance, and taxes on the [ ] property were paid with the rental proceeds that had been deposited into a joint bank account held by the parties'); *Davis v. Davis*, No. 03A01-9708-CH-00381, 1999 WL 83948, at *4 (Tenn. Ct. App. Feb. 19, 1999) (affirming marital classification when there was 'insufficient proof to substantiate' the husband's claim that he purchased the property with funds given to him by his uncle).". The evidence, therefore, does not preponderate against the court's finding that the properties were Husband's separate property and that no commingling or transmutation occurred.

B.  Whether the Switchboard property transmuted into marital property.

The court separately analyzed whether the Switchboard property had been transmuted into marital property because Husband had titled it in both parties' names. The court concluded:

> The presumption that titling the property in both names was transmutation is overcome by the fact that the funds used to purchase the property came from the sale of Mr. Perkins' pre-marital property, he was the only party on the promissory note, and he ceased to title property in both names upon discovering he was not required to by law. The intentional act of holding funds from the sale of his house to use in the purchase, then separating the bank accounts for the purposes of the rental property show Mr. Perkins had an original intention that the Switchboard property was not marital property, and not a gift, but rather an investment property funded by his separate property and income.

Therefore, the court concluded that Husband had successfully proven that it was not his intention that the property was a gift to the marital estate and that Husband successfully rebutted the presumption that the property had been transmuted into marital property. The evidence does not preponderate against this finding. As this Court has previously explained:

> Joint ownership of a marital residence, even one that was a spouse's separate property prior to the marriage, gives rise to a presumption that the property is marital, not separate. The presumption created by joint ownership is not always controlling and can be overcome by evidence of contrary conduct by the parties and the manner in which the parties themselves treated the property.

*Hayes v. Hayes*, No. W2010-02015-COA-R3-CV, 2012 WL 4936282, at *11 (Tenn. Ct. App. Oct. 18, 2012) (citations omitted). This Court has outlined the four most common factors to be considered when determining whether separate property has been transmuted

into marital property: "(1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property." *Fox*, 2006 WL 2535407, at *5. Of these four factors, only the third factor relating to Husband titling the property jointly weighs in favor of a finding of transmutation. However, as the trial court found, Husband's "contrary conduct" and "the manner in which the parties" treated the property weigh against a finding of transmutation. Further, "the classification of property does not depend on the state of its record title but on the conduct of the parties." *Altman v. Altman*, 181 S.W.3d 676, 680-81 (Tenn. Ct. App. 2005). The parties' conduct showed that Husband only titled the Switchboard property jointly because of the false belief that he was required to do so. The parties' subsequent conduct supports the court's conclusion that Husband did not intend for the property to be marital.

Wife argues that the court "operated under an assumption that the mortgage associated with the Switchboard property was solely" held in Husband's name, an assertion the record supports. According to Wife "[t]his fact, coupled with the fact that [the Switchboard property] is titled in both parties' names, proves the parties' intent that this was and would remain marital property." Although we agree with Wife's assertion that the court erred in its analysis regarding which property's mortgage she was listed on, we do not believe this error alone necessitates reversal. As stated above, it is the parties' conduct which evidences an intent of transmutation. As with Husband titling the property jointly, Husband ceased listing Wife on the subsequently acquired properties' mortgages after this initial property purchase. Wife had the burden of establishing transmutation, *Sandford v. McKee*, No. M2010-00562-COA-R3-CV, 2012 WL 4474177, at *6 (Tenn. Ct. App. Sept. 27, 2012), and she failed to carry this burden at trial and on appeal.

    C. Whether the appreciation in the value of the rental properties was marital property.

Wife's remaining arguments regarding the classification of the properties concern the definition of marital property found in Tenn. Code Ann. § 36-4-121(b)(2)(B)(i), which defines as marital property "income from, and any increase in the value during the marriage of, property determined to be separate property in accordance with subdivision (b)(4) if each party substantially contributed to its preservation and appreciation." The statute clarifies that, in this context, "'substantial contribution' may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine." Tenn. Code Ann. § 36-4-121(b)(2)(D). Regarding Wife's contributions to the properties, the court concluded:

> During the trial Ms. Sloane offered into evidence Exhibit No. 25, reflecting the payments she made for goods and services which benefitted

both parties. The bills totaled $13,846.07 over a 30-month period or approximately $461.20 per month as an average. The payments appear to be largely spent on cell phone bills, home furnishings and other miscellaneous items; with an admixture of utility bills, none of which are ascribed to a specific property. In her deposition, Ms. Sloane had a difficult time - with the exception of the Switchboard Road property - remembering what tasks she performed to contribute to the appreciation of the property, what goods she purchased for the property, or how much time she spent performing services at the property. Most importantly, she was unable to place a value on any of these goods and services. Conversely, Mr. Perkins made all of the mortgage payments on both homes and testified that he also contributed to household expenses and furnishings in an amount at least equal to, if not greater than, that of Ms. Sloane. The evidence in this case is clear that not only did Mr. Perkins intend for the property to remain his separate property, but contrary to her testimony at trial, Ms. Sloane also acted during the marriage as if the properties were Mr. Perkins' separate property.
. . .

T.C.A. § 36-4-121(b)(1)(B) does not provide that any increase in value of separate property during marriage constitutes marital property; the increase in value constitutes marital property only when the spouse has substantially contributed to its preservation and appreciation. *Langschmidt*, at 747. Here, Ms. Sloane contends that she labored in the rental properties and in the marital residence, and therefore she is entitled to the increase in value of the properties. As discussed supra, Ms. Sloane was not able to quantify the value of her labor. Her financial contribution claims, which she also could not quantify, were de minimis. Therefore, the increase in the value of the marital residence, along with the increase in value of the four rental properties, will not be treated as marital property because Ms. Sloane did not substantially contribute to the preservation and appreciation of the properties.

For the appreciation in the value of the five properties, or the rental incomes from the four rental properties, to be considered marital, Wife must have contributed to both the preservation and appreciation of the properties. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 746 (Tenn. 2002). Although contributions may be direct or indirect, they must be "'real and significant,'" and there must be some link between the contributions and the appreciation of the property's value. *Keyt v. Keyt*, 244 S.W.3d 321, 329 (Tenn. 2007) (quoting *McFarland v. McFarland*, No. M2005-01260-COA-R3-CV, 2007 WL 2254576, at *6 (Tenn. Ct. App. Aug. 6, 2007)). Whether a spouse made a substantial contribution to the preservation and appreciation of the subject property presents a question of fact. *Id.*

Wife argues that the evidence presented at the trial preponderates against the court's finding that her contributions were minimal. In particular, Wife points to her testimony, several photos, and a summary of the expenses she claims she paid. Wife directs us to her

testimony that she recalled working on several of the properties. She testified, however, that she did not keep any log or journal of the work she completed and that she did not contribute financially to the purchase of these properties. Wife's proffered evidence is insufficient to overturn the court's factual finding regarding her contributions.

Although the trial court did not directly make a credibility finding regarding Wife, we can infer from how the court resolved the case that it did not find Wife to be credible regarding any work she did. *See Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733-34 (Tenn. 2002) ("Indeed, the trial court's findings with respect to credibility and the weight of the evidence . . . generally may be inferred from the manner in which the trial court resolves conflicts in the testimony and decides the case."). The court specifically found Husband and his expert to be credible witnesses. Regarding Wife's testimony, the court stated she "had a difficult time" remembering what she did on the properties. We infer from this that the court did not find Wife to be credible regarding her work on the property and did not credit her testimony. We require clear and convincing evidence to overturn factual determinations based upon credibility determinations. *Easley v. City of Memphis*, 699 S.W.3d 268, 270 (Tenn. 2024). This deference extends both to express credibility determinations and any implied in the court's holdings. *Id.* Wife has failed to point to evidence meeting this standard.

Whether Wife made substantial contributions to the property is a factual determination, and as such, "'we are disinclined to disturb the trial court's decision'" unless the findings "'lack[ ] proper evidentiary support or result[ ] from some error of law or misapplication of statutory requirements and procedures.'" *Keyt*, 244 S.W.3d at 332 (quoting *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)). We, therefore, affirm the trial court's determination that any increase in the value of the properties was properly treated as Husband's separate property. We also affirm the court's determination that the five properties were Husband's separate property.

II.     Division of marital property

Wife next takes issue with the trial court's division of the marital property. In the final order, the court found that the marital properties subject to division were Husband's 401(k) account, his checking account, Wife's IRA account, and her checking account. Based upon the values in these accounts, the court awarded Wife $31,718.86. The court then likened the matter to the case of *Batson v. Batson*, considered the statutory factors found in Tenn. Code Ann. § 36-4-121(c), and determined that returning the parties to their relative financial states from before the marriage was equitable. On appeal, Wife takes issue with the timing of the court's valuation of Husband's 401(k) account and asserts that the court's division was not equitable. For the reasons below, we respectfully disagree.

## A. The timing of the court's valuation of Husband's 401(k) account.

As a threshold matter, we find no issue with the court dividing the value of Husband's 401(k) account as of the final divorce hearing. The value of a marital asset is a question of fact. *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). Our statute provides that property is to be "valued as of a date as near as reasonably possible to the final divorce hearing date." Tenn. Code Ann. § 36-4-121(b)(2)(A). This Court has previously construed the term "final divorce hearing date" as meaning the date a decree of divorce was entered. *Dunlap v. Dunlap*, 996 S.W.2d 803, 817 (Tenn. Ct. App. 1998).

Here, as in *Dunlap*, the issues of divorce and property division were bifurcated. The court entered the final divorce decree on March 24, 2022, after a hearing on March 4, 2022. At the final hearing, Husband testified that the value of his 401(k) account was $76,514.30 as of September 30, 2022. Husband was also asked about any contributions he made to that account since the entry of the divorce decree and stated that the value had increased to $134,000. Wife contends on appeal that the court should have included Husband's post-divorce contributions in the marital estate. Courts assign values to marital assets based upon all the relevant evidence parties present. *Wallace*, 733 S.W.2d at 107. Courts, using their discretion, are to assign the asset a value within the range of the evidence submitted. *Id.* Here, the parties presented evidence regarding the value of the 401(k), providing the value as of September 30, 2022. This was the value submitted that was the account's value nearest the date of the entry of the divorce decree. Therefore, we conclude that the trial court did not abuse its discretion in assigning the value of the 401(k) account.[4]

## B. The court's decision to return the parties to their financial states from before the marriage and its property division.

Turning next to the court's division of the marital estate, Wife contends that the trial court erred by dividing the estate so that Husband and Wife were returned to their respective financial states from before the marriage. Tennessee courts are directed to divide marital assets "equitably" between the parties. Tenn. Code Ann. § 36-4-121(a)(1). Trial courts possess broad discretion when dividing the marital estate. *Baggett*, 422 S.W.3d at 543. Therefore, the trial court's division of the marital estate will be left undisturbed unless it lacks evidentiary support or the court committed an error of law. *Id.* (citing *Cradic v. Cradic*, E2012-00227-COA-R3-CV, 2013 WL 672576, at *2 (Tenn. Ct. App. Feb. 22, 2013)). To that end, our role is not to "tweak" the court's property division but rather to "determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent

---

[4] Wife points to a case where this Court has stated that the "value placed on marital property should, as near as possible reflect the value of the property on the date that it is divided." *Dobbs v. Dobbs*, No. M2011-01523-COA-R3-CV, 2012 WL 3201938, at *3 n.3 (Tenn. Ct. App. Aug. 7, 2012). However, we find this case to be distinguishable as the issues of divorce and property division were not bifurcated, meaning the court was not presented with this specific issue.

with logic and reason, and whether the trial court's division of the marital property is equitable." *Owens*, 241 S.W.3d at 490.

Courts consider the following statutory factors when equitably dividing marital property:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
    (B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed;
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;
(11) The amount of social security benefits available to each spouse;
(12) Such other factors as are necessary to consider the equities between the parties; and
(13) The total amount of attorney fees and expenses paid by each party in connection with the proceedings; whether the attorney fees and expenses

were paid from marital property, separate property, or funds borrowed by a party; and the reasonableness, under the factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct, and necessity of the attorney fees and expenses paid by each party.

Tenn. Code Ann. § 36-4-121(c). For a property division to be equitable, it does not necessarily need to be equal. *Batson*, 769 S.W.2d at 859. Courts should strive to create an equitable division by "considering and weighing the most relevant factors in light of the unique facts of the case." *Id.*

Here, the trial court determined that returning the parties to their relative financial states from before the marriage was the most equitable distribution of the marital estate. The court came to this conclusion, in part, based upon the short duration of the parties' marriage, stating:

> Here, the facts clearly support a *Batson* approach. Mr. Perkins completed his education prior to the marriage and saw the increase in his income prior to the beginning of the marriage. He owned a property prior to marriage that he sold to fund his education, and built a property prior to the marriage that he sold for the investment into the rental properties acquired during the marriage. The parties were largely supported by his income during the marriage, while Ms. Sloane's income was used to support her children from a previous relationship and to grow her separate business. Ms. Sloane could not substantiate in her testimony any quantifiable amount of income or labor she contributed to the marital or separate property. Ms. Sloane did not contribute to the professional work of Mr. Perkins, or his education, and during the marriage, Mr. Perkins made all contributions to the repayment of his student loans from his payroll income.

> The parties were married in December of 2018, but separated in June of 2021, with the divorce following in March 2022. Therefore, the duration of the marriage was just over three years, and the parties were separated after just two and a half years. During the short course of this marriage, Mr. Perkins funded an investment account for Ms. Sloane, supported the household, paid his student loans, increased his rental property portfolio, and contributed to the household expenditures. Prior to the marriage Ms. Sloane was self-sufficient and had an established business that sustained her lifestyle and the support of her children. Ms. Sloane did not have any child support delinquency issues with the father of her children, and received greater than the support designated in the court-ordered parenting plan. Ms. Sloane had a family property that she lived on with minimal expense and Mr. Perkins had a property that he bought prior to his education. Both parties were self-

sufficient prior to the marriage, and both parties are self-sufficient following the marriage.

Consistent with *Batson*, the Court finds that the short duration of the marriage is a key factor and the equities of this case dictate that both parties should be substantially restored to the financial positions they were in prior to the marriage. The division of investments made with marital income into bank accounts and retirement accounts is appropriate.

Wife argues on appeal that the court erred in likening the case to *Batson* and, instead, should have used the approach found in *Powell v. Powell*, 124 S.W.3d 100 (Tenn. Ct. App. 2003). *Powell* involved a divorce after a marriage of short duration. *Powell*, 124 S.W.3d at 102. After the trial court rejected the *Batson* approach to dividing the parties' marital property, this Court affirmed, stating that *Batson* does not mandate returning the parties to the positions they were in prior to the marriage. *Id.* at 107. Important to this finding was that a large portion of the martial estate was a business, which was "clearly marital property." *Id.* Because of this, the court concluded that "it would be impossible to divide the property" in a manner that returned the parties to their pre-marital financial states. *Id.* Indeed, the *Powell* court stated that the main difference between that case and *Batson* was that "'the majority of the marital estate in *Batson* consisted of an increase in the value of Husband's separate property during the course of the marriage.'" *Id.* (quoting *Hofer v. Hofer*, No. 02A01-9510-CH-00210, 1997 WL 39503, at *13 (Tenn. Ct. App. Feb. 3, 1997)). Wife's arguments on appeal are based upon her assertion that the five properties Husband owned should have been classified as marital property. As we have already determined that the trial court correctly classified these properties as Husband's separate property, we need not address Wife's arguments based on this assertion. In the present case, most of the marital estate consisted of the separate properties purchased during the marriage and the increases in their values. Therefore, we find no error in the court utilizing the approach found in *Batson* to divide the parties' estate.

Further, we cannot say the evidence preponderates against the court's equitable division. The court determined that the marital estate consisted of Husband's 401(k) account valued at $76,514.41; Husband's checking account valued at $8,596.85; Wife's IRA valued at $20,114.82; and Wife's checking accounts valued together at $1,555.73. Husband's and Wife's portions of the marital estate, therefore, were valued at $85,111.26 and $21,670.55 respectively. The court then found the difference between the two values, divided this into two, and awarded Wife the resulting amount.[5] In a marriage of such short duration, much of the parties' assets continued to be separate, and we cannot say that this

---

[5] Wife correctly points out that the trial court appears to have made a mathematical error in its award. Based upon these amounts, the correct award would be $31,720.36 (($85,111.26 - $21,670.55) / 2 = $31,720.36). Instead, the court determined that the award was $31,718.86. This results in a difference of $1.50, which we consider insignificant.

division failed to be equitable. Therefore, we cannot conclude that the court committed an error of law or that the division is based upon an evidentiary error and affirm.[6]

III.    Attorney's fees

Wife's final issues relate to the award of attorney's fees, both at the trial court and on appeal. Wife takes issue with the trial court determining that she should be responsible for three-quarters of her total attorney's fees and all of her discretionary costs. Wife also requests that this Court award her attorney's fees incurred on appeal. We will address each issue in turn.

It is important to note that Tennessee follows the "American Rule" regarding attorney's fees. *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017). This rule dictates that a party "'may recover attorney's fees only if: (1) a contractual or statutory provision creates a right to recover attorney's fees; or (2) some other recognized exception to the American Rule applies, allowing for recovery of such fees in a particular case.'" *Id.* (quoting *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009)). Absent one of these conditions, a litigant is responsible for his or her own attorney's fees. *Id.*

The trial court awarded Wife one-quarter of her total attorney's fees under Tenn. Code Ann. § 36-4-121. This section now includes within the definition of marital debt, "*unpaid* attorney fees and expenses incurred in connection with the [divorce] proceedings through the date of the final hearing." Tenn. Code Ann. § 36-4-121(b)(1)(B) (emphasis added). It is apparent from the record that the trial court divided the total amount of attorney's fees and expenses Wife had incurred, not solely the fees that remained unpaid. Therefore, the cited statute did not provide the trial court with the authority to divide the fees in this manner.

When dividing marital debt, including unpaid attorney's fees, under Tenn. Code Ann. § 36-4-121, a trial court must consider the list of factors found in subsection (i):

(i)(1) In allocating responsibility for the payment of marital debt, the court shall consider the following factors:
    (A) The purpose of the debt;
    (B) Which party incurred the debt;
    (C) Which party benefitted from incurring the debt; and

---

[6] Wife raises that the order is silent regarding her presence on the Switchboard property's mortgage. As we have affirmed this property being awarded to Husband as his separate property, on remand the trial court should modify its order to require Husband to take whatever steps are necessary to remove Wife from this mortgage.

(D) Which party is best able to repay the debt.

(2) In allocating responsibility for payment of unpaid attorney fees and expenses incurred in connection with the proceedings, the court shall consider the factors in subdivision (i)(1) and the following factors:

(A) The total amount of attorney fees and expenses incurred by each party in connection with the proceedings;

(B) The total amount of attorney fees and expenses paid by each party in connection with the proceedings;

(C) Whether the attorney fees and expenses incurred by each party are reasonable under the factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct; and

(D) Whether the attorney fees and expenses were necessary.

Tenn. Code Ann. § 36-4-121(i)(1)-(2). In considering these factors, the trial court made the following findings of fact:

- Ms. Sloane chose to change representation during the dependency of the divorce, necessarily occasioning a degree of repetitive billing.
- Mr. Perkins is in a better position to pay his attorney fees than is Ms. Sloane.
- The fees of Robert Vance were necessary to support Mr. Perkins' claim that the real estate in this case remained separate property.
- The fees of James Samuel were unnecessary for the contrary reason.
- The parties stipulated to a declaration of divorce.
- The first incident in this combined litigation was Ms. Sloane's request for an Order of Protection that was ultimately granted after a hearing.

Based upon these findings,[7] the court concluded that Wife should be responsible for three-quarters of her total attorney's fees, or $33,711.38. Upon our review, we have determined that the court failed to make the necessary findings under the statute and Tenn.

---

[7] In its consideration of factor 13 of the equitable division factors found in Tenn. Code Ann. § 36-4-121(c), the court also found:

Consideration of the total amount of attorney fees and expenses incurred and paid by each party in connection with the proceedings. Ms. Sloane was awarded $885 in attorneys' fees against Mr. Perkins in the Order of Protection companion case. In this case, Mr. Perkins has incurred and will pay a total of $47,183.00 in discretionary expenses and attorney's fees. Ms. Sloane has incurred an additional $51,398.50 in additional discretionary expenses and attorney's fees.

R. Civ. P. 52.01.[8] A trial court "has a duty to ensure that its rulings are adequately explained." *Vaughn v. DMC-Memphis, LLC*, No. W2019-00886-COA-R3-CV, 2021 WL 274761, at *11 (Tenn. Ct. App. Jan. 27, 2021). This serves the important purpose of preventing situations where appellate courts are "left to guess as to why the trial court reached its conclusion." *Calzada v. State Volunteer Mut. Ins. Co.*, No. M2020-01697-COA-R3-CV, 2021 WL 5368020, at *8 (Tenn. Ct. App. Nov. 18, 2021). Unfortunately, this is precisely the situation in the present case. We cannot discern from the limited findings of fact how the trial court determined the amount of attorney's fees for which Wife should be responsible.

Also notably absent from the court's findings are certain findings required under subsection (i)(2). This section includes the direction that the court "shall" consider the enumerated factors. "Shall" is generally construed to mean that the provision is mandatory. *W. Tenn. Motor Express Inc. v. Tenn. Pub. Serv. Comm'n*, 514 S.W.2d 742, 746 (Tenn. 1974). From the court's limited findings, we cannot determine whether the court considered the four mandatory factors regarding an award of attorney's fees.

For the above reasons, we vacate this portion of the order and remand for the court to enter sufficient findings to support its award of attorney's fees under the relevant statutory provisions.

The final issue Wife presents is her attorney's fees incurred on appeal. As Wife failed to prevail on any issue, we would typically be disinclined to award her attorney's fees. Further, in the case Wife cites to for the proposition that an award of attorney's fees is within this Court's discretion, this Court based its award of attorney's fees on Tenn. Code Ann. § 36-5-103(c). *See Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007). As this Court has recently stated,

> None of the triggering events for attorney's fees mentioned in Tennessee Code Annotated section 36-5-103(c) apply to the present case. There is no criminal or civil attempt action. *See* Tenn. Code Ann. § 36-5-103(c). This is also not an "other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order," or a "suit or action concerning the adjudication of the custody or change of custody of any children ...." *See id.* This appeal challenges the distribution of the marital estate exclusively. Accordingly, the ultimate statutory basis for the authority pursuant to which Wife seeks attorney's fees on appeal is simply inapplicable to the present case.

---

[8] This rule provides, in pertinent part, that: "In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." TENN. R. CIV. P. 52.01

*Henry v. Henry*, No. M2024-00030-COA-R3-CV, 2025 WL 304573, at \*13 (Tenn. Ct. App. Jan. 27, 2025). The same is true in this case. For this reason, we decline to award Wife her attorney's fees on appeal.

CONCLUSION

The judgment of the trial court is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed against the appellant, Elizabeth Sloane, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE